Anthony Allen LONDON, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–07–00983–CR.

Court of Appeals of Texas, Dallas.

Dec. 5, 2008.

Discretionary Review Refused April 29, 2009.

Lori L. Ordiway, Dallas, for Appellant.

Craig Watkins, Dallas County Dist. Atty., Patricia Poppoff Noble, Asst. Dist. Atty., Dallas, for The State of Texas.

Before Justices MOSELEY, FRANCIS, and LANG.

## OPINION ON RECONSIDERATION ON PDR

Opinion by Justice MOSELEY.

We withdraw our opinion of September 25, 2008, and vacate the judgment of that date. This corrected opinion is substituted as the opinion of the Court. *See* TEX. R.APP. P. 50(a).

Appellant Anthony Allen London shot and killed Kerwin Holmes. A jury convicted appellant of murder and assessed punishment at twenty years' imprisonment. Appellant brings six issues arising from the guilt/innocence phase of the trial. As discussed herein, we resolve these issues against appellant.

Appellant brings an additional three issues arising from the punishment phase, including his fifth issue in which he complains the trial court erred by instructing the jury on sudden passion because the instruction did not require the jury to render a unanimous verdict on this issue. The State agrees the instruction was improper but argues there was no egregious harm. Because we conclude the error caused egregious harm, we resolve appellant's fifth issue in his favor, reverse the trial court's judgment as to punishment, and remand the case for a new punishment hearing. *See* TEX.CODE CRIM. PROC. ANN. art. 44.29(b) (Vernon Supp.2008).

## I. BACKGROUND

The indictment alleged both that appellant intentionally and knowingly caused Holmes's death by shooting him with a firearm, and that appellant intended to cause serious bodily injury to Holmes and committed an act clearly dangerous to human life by shooting him, causing his death.

At the time of the incident, Holmes was sixteen years old, and appellant was about twenty years old. On March 28, 2006, at about 1:00 p.m., Holmes and his girlfriend were walking from a store to Holmes's residence at a motel. They met appellant, and an argument began between Holmes and appellant. Appellant ran into a room at another nearby motel. Holmes got into the back seat of a car driven by Roderic Fowlks and sat behind him. Also in the car were Fowlks's girlfriend and another passenger. As the car drove away, appellant returned to the street with a gun and fired at the retreating car. A bullet pierced the car's rear window and hit Holmes in the head, killing him. The jury returned a general verdict that appellant was guilty of murder "as charged in the indictment."

## II. SUFFICIENCY OF THE EVIDENCE

In his first and second issues, appellant contends the evidence is legally and factually insufficient to support the jury's rejection of his claim of self-defense.

### A. Standard of Review and Applicable Law

When reviewing challenges to the legal sufficiency of the evidence, we apply well-established standards. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Vodochodsky v. State,* 158 S.W.3d 502, 509 (Tex.Crim.App.2005); *Swearingen v. State,* 101 S.W.3d 89, 95 (Tex.Crim.App. 2003). Further, our review encompasses all the evidence, whether properly or improperly admitted. *See Marshall v. State,* 210 S.W.3d 618, 625 (Tex.Crim.App.2006), *cert. denied,* 552 U.S. 842, 128 S.Ct. 87, 169 L.Ed.2d 66 (2007).

In a factual sufficiency review, we view all of the evidence in a neutral light and ask whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *See Watson v. State,* 204 S.W.3d 404, 415 (Tex.Crim.App.2006). We will reverse a verdict of guilty on a factual sufficiency challenge only when we can say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Id.* at 417. *See Garza v. State,* 213 S.W.3d 338, 344 (Tex.Crim.App.2007). We measure the factual sufficiency of the evidence against a hypothetically correct jury charge authorized by the indictment. *See Fuller v. State,* 73 S.W.3d 250, 252 (Tex. Crim.App.2002); *Gollihar v. State,* 46 S.W.3d 243, 254 (Tex.Crim.App.2001); *Malik v. State,* 953 S.W.2d 234, 239–40 (Tex. Crim.App.1997).

■ A defendant has the burden of producing some evidence to support a claim of self-defense. *Zuliani v. State,* 97 S.W.3d 589, 594 (Tex.Crim.App.2003). The State has the burden of persuasion in disproving self-defense. *Saxton v. State,* 804 S.W.2d 910, 913 (Tex.Crim.App.1991). This burden does not require the State to produce evidence refuting the self-defense claim; rather, the burden requires the State to prove its case beyond a reasonable doubt. *Id.* Self-defense is an issue of fact to be determined by the jury. *Id.* at 913–14. A jury verdict of guilty is an implicit finding rejecting the defendant's self-defense theory. *Id.* at 914.

■ In reviewing a challenge to the legal and factual sufficiency of the evidence to support a jury's rejection of a defense to prosecution, we use the same standards used in reviewing the sufficiency of the evidence to support a verdict of guilt, looking at the sufficiency of the evidence to support both the verdict as well as the rejection of the defense. *Zuliani,* 97 S.W.3d at 595 (factual sufficiency standard); *Saxton,* 804 S.W.2d at 914 (legal sufficiency standard).

■ As charged here, a person commits the offense of murder if he intentionally or knowingly causes the death of an individual, or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(1), (2) (Vernon 2003). As applicable to this case, a person is justified in using deadly force against another when and to the degree he reasonably believes the deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force, and a reasonable person in the defendant's situation would not have retreated.[1]

## B. Discussion

■ There was evidence from bystanders and the people in the car that, during their confrontation immediately before the shooting, appellant and Holmes exchanged "fighting words" and were preparing to engage in a fistfight. Appellant retreated, Holmes got into the car, and, as the car was leaving, appellant returned with a gun. Appellant fired about six shots towards the retreating car. There was testimony that no one, other than appellant, displayed a weapon before appellant shot Holmes, and then Fowlks stopped the car, took a gun from the console, and got out of the car.

---

1. Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, sec. 9.31, 1993 Tex. Gen. Laws 3586, 3598; Act of May 12, 1995, 74th Leg., R.S., ch. 190, § 1, 1995 Tex. Gen. Laws 1919; Act of May 16, 1995, 74th Leg., R.S., ch. 235, § 1, 1995 Tex. Gen. Laws 2141, 2142, *all amended by* Act of Mar. 20, 2007, 80th Leg., R.S., ch. 1, §§ 2, 3, 2007 Tex. Gen. Laws 1, 1–2 (current versions at TEX. PENAL CODE ANN. §§ 9.31, .32 (Vernon Supp.2008)).

Appellant admitted he left after talking to Holmes and then returned, after which someone in the car, which was "driving real slow," started shooting at him. He then shot back at the car, and retreated a second time. Appellant contends he was "under attack" from Holmes and his associates and he could not retreat. He testified he was in fear for his life when he saw a person in the car with a gun.

The evidence is undisputed that appellant retreated after his face-to-face confrontation with Holmes and then returned to the scene with a gun. In addition, appellant relies on his own testimony that Holmes and others threatened him by "saying bad words" about him and threatening his family by hitting his aunt with rocks. He points to a police officer's testimony that Holmes was known as a fighter; in response to the question whether Holmes "terrorize[d] that neighborhood," the officer responded, "I had a few calls on him, yes."

■ Appellant's testimony alone will not conclusively prove self-defense as a matter of law. *See Letson v. State*, 805 S.W.2d 801, 805–06 (Tex.App.-Houston [14th Dist.] 1990, no pet.). The jury is the sole judge of the witnesses' credibility and weight to give to their testimony. *See Swearingen*, 101 S.W.3d at 97. Considering all the record evidence in the light most favorable to the jury's verdict, we conclude a rational jury could have found appellant guilty of all of the elements of the offense of murder beyond a reasonable doubt and rejected appellant's self-defense claim. *See id.* at 95; *Saxton*, 804 S.W.2d at 914. Thus, we resolve appellant's first issue against him.

■ Appellant argues that inconsistencies in the testimony of some of the State's witnesses—including whether appellant had a backpack and a gun and the length and style of appellant's hair—render the evidence factually insufficient. However, inconsistencies in the descriptions of appellant do not render the evidence insufficient to support a conviction. *See Cooks v. State*, 844 S.W.2d 697, 708 (Tex.Crim.App.1992). Likewise, we reject appellant's argument that credibility issues among the State's witnesses—such as contradictions as to whether a witness had talked to the State before trial; Fowlks's admission that he did not immediately admit he had a gun; a witness gave a false name when questioned about the shooting; and another witness was convicted of the murder of appellant's aunt's boyfriend later the same day—render the evidence factually insufficient. *See Swearingen*, 101 S.W.3d at 97.

After reviewing the evidence in a neutral light, we cannot say the evidence supporting the conviction and the jury's implied rejection of appellant's self-defense claim is so obviously weak as to undermine confidence in the factfinder's determination or is so greatly outweighed by contrary proof. *See Garza*, 213 S.W.3d at 344; *Marshall*, 210 S.W.3d at 625; *Watson*, 204 S.W.3d at 414; *Zuliani*, 97 S.W.3d at 595. Concluding the evidence is factually sufficient to support the jury's verdict, we resolve appellant's second issue against him.

## III. EXCLUSION OF EVIDENCE

Relying on rules of evidence 404(a)(2) and 404(b), appellant argues his third and fourth issues together. In his third issue, appellant contends the trial court abused its discretion by excluding evidence of Holmes's gang involvement. Outside the jury's presence, Paul Cox testified Holmes was a member of a violent gang and Cox's life had been threatened. In response to the State's relevancy objection, counsel argued the evidence was relevant to Holmes's reputation. Counsel then asked

Cox if appellant knew these things about Holmes, and Cox replied in the affirmative. The State then argued that self-defense had not yet been raised, and such evidence had to relate to appellant's state of mind. The trial court ruled the evidence inadmissible.

In his fourth issue, appellant makes the same complaint as to evidence of Holmes's "violent past." During direct examination, appellant testified that when he first encountered Holmes, Fowlks and "all those other people of his" were "saying bad words" about him and "[s]aying that they do me and stuff like that." Appellant testified they threatened his aunt and her boyfriend and earlier had thrown rocks at his aunt, hitting her and causing her to call the police. Appellant then testified as to his version of the events: he left after talking to Holmes; he returned and saw the car being driven "real slow"; he saw someone in the car with a gun who shot at him; and he shot back at the car. Appellant was asked if he was "scared of these people," to which he replied in the affirmative.

Then counsel asked, "Did your aunt's boyfriend get murdered a few hours after this happened?" The State asked to approach the bench, and a hearing was held outside the jury's presence. The State objected that the second murder was not relevant to Holmes's murder and that it had been stipulated that another individual committed the second murder. Defense counsel argued that "this has come up with the police officers ... working two murders" and that it showed "the violence of [Holmes] and the associates, what was going through [appellant's] mind at the time

as to—you know, as to why he did what he had to do, because he knew they'd come back and kill him." The State argued that what happened before the alleged offense was relevant, but what happened after that was not relevant.

The trial court requested more information, and defense counsel elicited the following testimony: appellant knew Holmes and his associates to be violent; they "terrorized the neighborhood"; after appellant fired his weapon, someone chased after him; appellant's aunt's boyfriend was present at Holmes's shooting; the boyfriend "end[ed] up getting killed" by Holmes's friend, who was a member of the same gang; at the time, appellant did not know who killed the boyfriend; appellant was afraid of "the same thing, them coming and killing" him. The State again argued that the second murder was irrelevant to state of mind because it happened "after the fact." Counsel argued it was evidence as to appellant's state of mind, "how these people were violent" and "why he fired that weapon because they were going to come back and kill him." The evidence was not admitted.[2]

## A. Standard of Review and Applicable Law

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Willover v. State*, 70 S.W.3d 841, 845 (Tex.Crim.App.2002). We reverse only when the trial court's decision was so clearly wrong as to fall outside the zone of reasonable disagreement. *Id.* We uphold the trial court's ruling if it was correct on any theory rea-

2. The trial court said, "All right. I'll overrule it." However, he subsequently said, "I don't think that [i.e., the killing of a witness to the first offense] has anything to do with this." Appellant contends the trial court excluded all

the evidence offered during the hearing outside the presence of the jury, the State does not disagree, and we agree that was the trial court's ultimate ruling.

sonably supported by the evidence and applicable to the case. *Id.*

■■■ Generally, a defendant in a homicide prosecution who raises the issue of self-defense may introduce evidence of the victim's violent character. TEX.R. EVID. 404(a)(2); *Torres v. State,* 71 S.W.3d 758, 760 (Tex.Crim.App.2002); *Reyna v. State,* 99 S.W.3d 344, 346 (Tex.App.-Fort Worth 2003, pet. ref'd). The defendant may offer opinion or reputation testimony to prove the victim acted in conformity with his violent nature. TEX. RS. EVID. 404(a)(2), 405(a); *Torres,* 71 S.W.3d at 760; *Reyna,* 99 S.W.3d at 346. Specific, violent acts of misconduct may be admitted to show the reasonableness of the defendant's fear of danger, or to show that the victim was the first aggressor. *Torres,* 71 S.W.3d at 760; *Reyna,* 99 S.W.3d at 346–47. *See Mozon v. State,* 991 S.W.2d 841, 846 (Tex. Crim.App.1999) (victim's extraneous acts of violence admissible to show defendant's state of mind pursuant to rule of criminal evidence 404(b)).

■■■ This general rule is not without limitation. Evidence of specific bad acts is only admissible to the extent it is relevant for a purpose other than to show character conformity. TEX.R. EVID. 404(b); *Torres,* 71 S.W.3d at 760; *Reyna,* 99 S.W.3d at 347. When a deceased's unambiguous, violent, or aggressive act needs no explaining, evidence of the deceased's extraneous conduct would have no relevance apart from its tendency to prove his character conformity, and thus would be inadmissible. TEX.R. EVID. 404(b); *Reyna,* 99 S.W.3d at 347. *See Thompson v. State,* 659 S.W.2d 649, 653–54 (Tex.Crim.App. 1983). Before a specific, violent act will be admissible to support a claim of self-defense, there must be some evidence of a violent or aggressive act by the deceased that tends to raise the issue of self-defense and that the specific extraneous conduct

may explain. *See Torres,* 71 S.W.3d at 761; *Thompson,* 659 S.W.2d at 653–54.

**B. Discussion**

**1. First Aggressor**

■■■ First, appellant argues the evidence as to gang affiliation and Holmes's "proclivity for violence" was admissible to show Holmes was the first aggressor. However, we may not overturn a trial court's decision on a legal theory not presented to the trial court. *See Vasquez v. State,* 225 S.W.3d 541, 543 (Tex.Crim.App. 2007); *Hailey v. State,* 87 S.W.3d 118, 122 (Tex.Crim.App.2002). *See also* TEX.R.APP. P. 33.1(a)(1). Because appellant did not present his "first aggressor" argument in the trial court, he has failed to preserve it for review.

**2. Appellant's State of Mind**

■■■ Next, appellant argues Holmes's "extraneous acts of violence" were admissible to show appellant's state of mind. He argues the evidence showed he reasonably believed he was in danger when he thought he was being confronted and attacked by Holmes and members of his gang and reasonably believed his own use of force was immediately necessary to protect himself.

Although appellant's issue refers to Holmes's "violent past," appellant's argument includes references to evidence of the murder of his aunt's boyfriend and evidence that someone chased appellant after he shot Holmes. Evidence as to these events—which took place after appellant killed Holmes—is irrelevant to appellant's state of mind when he fired the shot. *See Tate v. State,* 981 S.W.2d 189, 193 (Tex. Crim.App.1998) (discussing evidence of victim's previous threat of harm to prove intent or motive to cause harm). Further, through a stipulation of evidence, the jury

was informed that one of the bystanders was convicted of a murder that occurred in a room of one of the motels following Holmes's death. Therefore, we conclude the trial court did not abuse its discretion in excluding evidence of the death of appellant's aunt's boyfriend and that someone chased appellant after he shot Holmes.

■ Next, we consider the exclusion of evidence of Holmes's "violent past"—gang affiliation and terrorizing the neighborhood. We cannot agree that this evidence met the conditions for admission under rules 404(a)(2) and 404(b). Assuming Holmes shot at appellant from the car, his doing so was an unambiguous act of aggression and violence that needed no explanation. In *Reyna*, 99 S.W.3d at 347, the Fort Worth Court of Appeals reached the same conclusion when the victim allegedly "flashed his gun" and shot first at the appellant. There, as here, the victim's alleged conduct was unambiguous. The *Reyna* court held the proffered testimony did "nothing more than show character conformity." *Id.* (citing Tex.R. Evid. 404(b)). That reasoning and conclusion apply here as well. Accordingly, we resolve appellant's third and fourth issues against him.

## IV. CHARGE ERROR

### A. Unanimity: Guilt/Innocence Charge

In his eighth issue, appellant argues his right to a unanimous verdict under the Texas Constitution was violated when the jury was allowed to return a non-unanimous verdict of guilty because the jury charge alleged two separate statutory offenses of murder. Specifically, appellant argues that subsections 19.02(b)(1) and (2), cited above, constitute two separate offenses. *See* Tex. Penal Code Ann. § 19.02(b)(1), (2). In his ninth issue, he argues his right to a unanimous verdict

under the Due Process Clause of the United States Constitution was also violated for the same reason.

### 1. Applicable Law

■ Under the Texas Constitution, a jury verdict in a felony case is required to be unanimous, and under our state statutes, unanimity is required in all criminal cases. *Ngo v. State*, 175 S.W.3d 738, 745 (Tex.Crim.App.2005). Unanimity in this context means that each and every juror agrees that the defendant committed the same, single, specific criminal act. *Id.* "The principle justification for the unanimity requirement is that it ensures that each juror is convinced beyond a reasonable doubt that the prosecution has proved each essential element of the offense." *Jefferson v. State*, 189 S.W.3d 305, 311 (Tex. Crim.App.2006) (internal quotations and citations omitted), *cert. denied*, 549 U.S. 957, 127 S.Ct. 386, 166 L.Ed.2d 276 (2006). Thus, while jury unanimity is required on the essential elements of the offense, when the statute in question establishes different modes or means by which the offense may be committed, unanimity is generally not required on the alternate modes or means of commission. *Id.*

### 2. Discussion

■ Here, the application paragraph of the jury charge at guilt/innocence authorized the jury to find appellant guilty if, in part, it found that he: (1) intentionally or knowingly caused Holmes's death by shooting him; or (2) intended to cause him serious bodily injury and committed an act clearly dangerous to human life by shooting him. Whether appellant intentionally caused Holmes's death, or whether appellant intended to cause Holmes serious bodily injury and committed an act clearly dangerous to human life that caused Holmes's death, only a single crime of murder was committed. *See Jefferson,*

189 S.W.3d at 312 (discussing means of committing course of conduct element of injury to a child); *Yost v. State*, 222 S.W.3d 865, 877–78 (Tex.App.-Houston [14th Dist.] 2007, pet. ref'd) (applying *Jefferson* analysis to charge on murder pursuant to section 19.02(b)(1) and (2) and citing *Aguirre v. State*, 732 S.W.2d 320, 326 (Tex. Crim.App.1982) (op. on reh'g)). We reject appellant's argument that the jury charge alleged two separate statutory offenses of murder, allowing the jury to return a non-unanimous verdict of guilty. Concluding the jury charge contained no error, we need not address whether appellant suffered any harm. *See Ngo*, 175 S.W.3d at 743. We resolve appellant's eighth and ninth issues against him.

### B. Unanimity: Punishment Charge

Following the application paragraph, the charge on punishment stated: "An affirmative ('yes') answer on the issue submitted must be unanimous, but if the jury is not unanimous in reaching an affirmative answer, then the issue must be answered 'no.'" In his fifth issue, appellant contends the trial court erred by instructing the jury on sudden passion because it did not require the jury to render a unanimous verdict on the issue. Because he did not object at trial, appellant argues the error caused him egregious harm.

#### 1. Applicable Law

If a defendant is convicted of murder, he may argue at punishment that he caused the death of the complainant while under the immediate influence of sudden passion arising from an adequate cause. TEX. PENAL CODE ANN. § 19.02(d). If a defendant establishes by a preponderance of the evidence that he did so, the offense level is reduced from a first-degree to a second-degree felony. *Id.; Trevino v. State*, 100 S.W.3d 232, 237 (Tex.Crim.App.2003). *See* TEX. PENAL CODE ANN. § 19.02(a)(1), (2)

(defining "sudden passion" and "adequate cause").

■ Article 37.07, section 3(c) of the code of criminal procedure provides:

If the jury finds the defendant guilty and the matter of punishment is referred to the jury, the verdict shall not be complete until a jury verdict has been rendered on both the guilt or innocence of the defendant and the amount of punishment. *In the event the jury shall fail to agree on the issue of punishment, a mistrial shall be declared only in the punishment phase of the trial, the jury shall be discharged, and no jeopardy shall attach.* The court shall impanel another jury as soon as practicable to determine the issue of punishment.

TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(c) (Vernon Supp.2008) (emphasis added). Thus, this statute requires "unanimity with respect to the jury's preliminary vote on sudden passion." *Sanchez v. State*, 23 S.W.3d 30, 34 (Tex.Crim.App.2000).

In *Sanchez*, the trial court charged the jury that "[a]n affirmative ('yes') answer on the issue [of sudden passion] submitted must be unanimous, but if the jury is not unanimous in reaching an affirmative answer, then the issue must be answered 'no.'" *Sanchez v. State*, No. 05–97–01389–CR, 1999 WL 173986, at *7 (Tex.App.-Dallas Mar. 31, 1999) (not designated for publication), *aff'd*, 23 S.W.3d 30 (Tex.Crim. App.2000). The court of criminal appeals determined that charge was erroneous. *Sanchez*, 23 S.W.3d at 34.

#### 2. Discussion

■ The charge to the jury here is identical to that in *Sanchez*. Accordingly, this jury charge was erroneous. The State agrees the instruction was improper but argues there was no egregious harm.

Having determined the jury charge on punishment was erroneous, we next consider whether the error caused egregious harm. *See Bluitt v. State*, 137 S.W.3d 51, 53 (Tex.Crim.App.2004) (applying egregious-harm standard to unobjected-to jury charge error); *Williams v. State*, 851 S.W.2d 282, 287 (Tex.Crim.App. 1993) (same), *overruled on other grounds by Posey v. State*, 966 S.W.2d 57, 63 (Tex. Crim.App.1998). *See also Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1984) (op. on reh'g). We must decide whether the error created such harm that the appellant did not have a fair and impartial trial. *Almanza*, 686 S.W.2d at 171. "The actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.*

In support of his egregious harm argument, appellant relies on our unpublished opinion in *Ibarra v. State*, No. 05–04–01294–CR, 2005 WL 1022700 (Tex.App.-Dallas May 3, 2005, no pet.) (not designated for publication). In that case, there was evidence and argument that appellant acted on sudden passion. The jury charge contained the same language as in *Sanchez* and this case. After the jury rejected the sudden passion special issue, the judge asked the jury if the verdict represented "your individual verdict on the special issue," and each juror raised his or her right hand. *Ibarra*, 2005 WL 1022700, at *5. The trial judge also read the sentence assessed by the jury and asked if it reflected "your individual verdict in this phase of the trial." Again, the record reflected that each juror raised his or her right hand. *Id.*

On appeal, we considered not whether there was any evidence the verdict was not unanimous, but whether there was any evidence that it was. The State argued the verdict forms—stating "we, the jurors"—"presumes that all the jurors agreed." *Id.* We said that language "is no evidence that the jurors unanimously agreed to a 'no' vote on the issue of sudden passion." *Id.* Further, we said:

> The instruction states the issue must be answered "no" if the jury is not unanimous in reaching an affirmative answer. This clearly provides for one juror to decide appellant was not under the immediate influence of sudden passion, thereby preventing a "yes" answer.

*Id.* Additionally, we rejected the collective vote as evidence the jury voted unanimously concerning the sudden passion special issue:

> Although the jurors raised their hands collectively when asked if the "no" answer reflected their individual verdict, no individual poll was taken. In light of the erroneous instruction, the record does not establish that each individual juror *voted* "no." Rather, the record reflects that the collective vote was "no." Because this could have been the result of the jury not being unanimous in reaching an affirmative answer, we conclude the error was actual and egregious.

*Id.*

We conclude there is no meaningful distinction between the facts in this case and *Ibarra*. Here, there was evidence and argument as to appellant's sudden passion. Specifically, his step-mother testified appellant was upset during this incident, and she never knew him to be a violent person previously. In addition, appellant's father agreed that appellant "just lost it" that day. In closing argument, the State drew the jury's attention to the sudden passion issue and the language in the charge:

> The 12 of you would all have to say, yes, we find that the Defense has proved by

a preponderance of the evidence that sudden passion is met in this case. If one of you say, no, then your answer is no. . . .

The State argues that the record contains no evidence that the jury's verdict was not unanimous, and thus appellant's argument that the verdict was not unanimous is "pure speculation." It notes that the trial judge read the jury's verdict on punishment and asked, "If that's your verdict, will everybody raise your hands?" Then he stated, "Let the record reflect all 12 hands were raised."

Our reasoning and conclusion follow that in *Ibarra*. Here, the collective "show of hands" vote—as in *Ibarra*—is not an individual poll of jurors. In light of the instruction given, the jury's collective vote does not establish that each individual juror voted "no" on the sudden passion special issue. Because the collective response could have been the result of the jury not being unanimous in reaching an affirmative answer, we conclude the error caused appellant egregious harm. *See Almanza,* 686 S.W.2d at 171. We sustain his fifth issue. In light of our disposition of appellant's fifth issue, we conclude we need not address appellant's sixth and seventh issues.[3] *See* Tex.R.App. P. 47.1.

## V. CONCLUSION

Having resolved appellant's fifth issue in his favor, we reverse the trial court's judgment and remand the case for a new punishment hearing. *See* Tex.Code Crim. Proc. Ann. art. 44.29(b).

---

**3.** In his sixth issue, appellant contends he received ineffective assistance of counsel when trial counsel failed to object to the error in the sudden passion instruction. In his seventh issue, appellant contends the evidence is factually insufficient to support the jury's failure to find in appellant's favor on the sudden passion issue.