**AFFIRM; Opinion issued March 19, 2013**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

### No. 05-11-01316-CR
_____

**STEVEN CASTELLANO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the 283rd Judicial District
Dallas County, Texas
Trial Court Cause No. F09-31103-T

## MEMORANDUM OPINION

Before Justices Bridges, O'Neill, and Murphy
Opinion By Justice Bridges

Appellant Steven Castellano appeals his murder conviction and accompanying sentence of 28 years' imprisonment. In a single issue, appellant contends the evidence is insufficient to support his conviction. We affirm.

**Background**

Xochitl Ortiz testified that, on November 27, 2009, she was awakened in her apartment by her dog. Ortiz looked through the blinds on her window and saw the dog was barking at two men who were arguing outside her apartment. She explained the argument concerned a debt. The man trying to collect the money (later identified as appellant) was described as: medium height, muscular, wearing a striped Polo shirt, dark pants, and tattoos on his arms. The other man (later

identified as the deceased, Richard Deleon) was taller and heavier. Ortiz explained she heard them yell back and forth for a few minutes until the man in the striped shirt left. About a minute later, the man returned with a weapon hidden behind his back. The two men began to argue for a few seconds until appellant shot Deleon. Ortiz testified Deleon did not attack appellant, but asked appellant not to shoot. She also stated Deleon had no time to react and no opportunity to get away. Ortiz never saw a weapon in Deleon's possession.

On January 21, 2010, Ortiz gave a written statement to the police. She also viewed a photo lineup, but was unable to identify anyone because it had been very dark and easier to see motions and movements than faces.

Bobby Torbellin testified he knew both appellant and Deleon. On the night of the incident, he had a conversation with appellant. Appellant wanted help finding some beer from a bootlegger because the stores were closed. When Torbellin did not find any beer, he started walking back to his apartment. On his way back to his apartment, Torbellin heard a gunshot and ducked. Then, he saw appellant running. Appellant told Torbellin: "Run, run. Get the f[***] out of here. . . . I shot that n[***]er. Get the f[***] out of here." Torbellin saw appellant go to his apartment and leave with his wife and brother. As Torbellin stood there, he heard Deleon screaming, asking for help. After Torbellin called 911, he heard Deleon scream, identifying appellant as the shooter. Approximately five minutes after Torbellin called 911, appellant came to him and said, "You don't know nothing. You ain't seen nothing."

Torbellin admitted he had been convicted of burglary and had two drug possession convictions. He further admitted that, on the night of the incident, he had used methamphetamine, but said it did not affect his thinking. Torbellin said he was aware appellant owned a weapon, but did not know whether Deleon owned a weapon. He did not see Deleon

carry a weapon the night of the incident. Torbellin testified he had bought drugs from appellant out of the vacant apartment next to Leshawna Bryant's apartment, and that it was well known drugs were sold out of that apartment.

Leshawna Bryant testified she also lived in the same apartment complex at the time of the incident and was awakened by two gunshots on November 27, 2009. She heard banging on her door and called 911. The man at her door yelled, "I've been shot. It hurts. I can't breathe." She said the man identified appellant as the shooter. Bryant knew appellant because she was friends with appellant's girlfriend. Bryant gave the police a description of appellant. She gave a statement to the police and identified appellant in a photo lineup. Bryant said she often saw people at the vacant apartment next to her, including appellant.

Rindy Rodriguez testified appellant was her fiancé, and they were living in the apartment complex on the night of the incident. She explained that she, appellant and Eric returned home between 2:00 and 3:00 a.m., and then appellant went to visit a friend, Jessica. Appellant's brother, Eric Castellano, remained in the apartment with Rodriguez. Before appellant returned home, Rodriguez said she heard a gunshot. She testified that, just prior to hearing the gunshot, she awakened Eric and sent him to check on appellant. Eric had been gone a minute or two when she heard the gunshot. After hearing the gunshot, Rodriguez grabbed her purse and jacket, left the apartment, and locked her door. She saw appellant and Eric walking toward the parking lot, and she went with them. They drove to appellant and Eric's mother's house in Waxahachie, and they stayed there until a few days later when appellant turned himself into the police.

Rodriguez testified she had seen Deleon a few days earlier when he approached her in an aggressive manner looking for appellant. She indicated she did not know Deleon.

Eric Castellano testified that, on the night of the offense, he was at the apartment appellant

and Rodriguez shared. He said he fell asleep on the couch, but Rodriguez awakened him to check on appellant. When he was outside, Eric heard a gunshot and heard someone call for help. Thinking appellant was calling for help, Eric drew his personal weapon and ran toward the sound of the gunshot. Eric testified he was licensed to carry a gun, but appellant was not.

On the way, Eric ran into Torbellin and told him to get out of the way. Eric then saw appellant running toward him, but he never saw who was asking for help. Eric told appellant they should go to the car. He saw Rodriguez outside and told her to get her purse so they could leave. Eric called his mother, who told Eric to bring appellant to her. Eric drove them to his mother's house in Waxahachie. Their mother called their attorney and, on the advice of the attorney, decided not to turn appellant into the police until the following Monday.

Sandra Castellano, the mother of appellant and Eric, testified she was awakened by a phone call from Eric on the date of the incident. After Eric told her there was a problem with appellant, she told Eric to bring appellant to her home in Waxahachie. Based on the advice of their lawyer, she turned appellant into the police on Monday following the incident. She also said she spoke with Torbellin shortly after the offense occurred and told him not to speak with the detective.

Appellant testified he lived with Rodriguez at the apartment complex for about three years prior to the incident. He said he had not worked a job for about a year and sold drugs to make money. Appellant sold drugs to Torbellin and saw him almost every day, but said he did not sell drugs to Deleon. Prior to the incident, appellant knew Deleon had been looking for him, because Torbellin had bought drugs from appellant with money Deleon had given him. Appellant indicated Deleon was angry because the drugs Torbellin had bought for Deleon were bad.

After returning home, appellant left the apartment with his gun to go to Jessica's apartment. Appellant carried the gun for protection because they were in a high-crime neighborhood. When

he was walking to Jessica's apartment, Deleon appeared in front of the abandoned apartment, which he knew was used as a place to sell drugs. Appellant agreed he had sold drugs from that apartment, but could not remember how long he had been selling drugs there.

Appellant said that Deleon, while coming at him in a threatening manner, was cussing and said he would get his money one way or another. Appellant told Deleon he would not get money, because appellant had not sold anything to him. Deleon responded he did not care if appellant had a gun and Deleon said he would "shoot [appellant's] bitch ass right then and there." Appellant explained the argument lasted less than a minute, and he denied leaving the argument to return with a gun.

Appellant indicated he was scared and felt like his life was in danger when Deleon reached behind his back. He did not remember telling the police he was scared from the moment he saw Deleon. Appellant agreed he never saw Deleon with a gun. When Deleon reached back, appellant said he shot Deleon once without aiming.

After he shot Deleon, appellant panicked and ran toward his apartment. He did not remember telling Torbellin, "You didn't see anything. You don't know anything." On his way to the apartment, he saw Eric with his gun drawn, and they decided to leave. They went to their mother's house in Waxahachie, where she called an attorney.

Officer Clint Blessing with the Grand Prairie Police Department responded to the 911 call. Blessing went to Bryant's apartment, from which the call had originated, and saw a man on the doorstep yelling he had been shot by appellant. He explained that after the medics cut off Deleon's shirt, Blessing could see Deleon had no weapons.

Dr. Chester Gwin, a medical examiner with SWIFS, performed the autopsy on Deleon. Gwin testified Deleon had been shot in the abdomen, which perforated the aorta. The cause of

death was gunshot wound of the abdomen. Deleon's blood contained metabolites of marijuana and atropine,[1] a resuscitative drug.

**Analysis**

On appeal, appellant argues the evidence adduced at trial is insufficient to support appellant's conviction. Specifically, appellant contends the evidence supports he acted in self-defense, thereby overcoming his murder conviction.

In reviewing a challenge to the sufficiency of the evidence, we examine all the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt and also found against appellant on self-defense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex. Crim. App. 2010) (plurality op.); *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991). We are required to defer to the jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony. *See Jackson*, 443 U.S. at 326 ("a court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution").

In order to obtain a conviction, the State was required to prove beyond a reasonable doubt that appellant intentionally or knowingly caused the death of Deleon or intended to cause serious bodily injury to Deleon and committed an act clearly dangerous to human life that caused the death of Deleon. TEX. PENAL CODE ANN. §§ 19.02(b)(1), (2) (West 2011). As for appellant's claim of

---

[1] Dr. Gwin testified that atropine is "a drug given in the hospital as kind of a resuscitative type drug. It's supposed to increase the heart rate to try to establish blood pressure and blood flow." From the record, it appears that atropine would have been administered to Deleon en route to the hospital.

self-defense,[2] a person is justified in using force against another when and to the degree he reasonably believes the force is immediately necessary to protect him against the other's use or attempted use of unlawful force. *Id.* at § 9.31. Furthermore, a person is justified in using deadly force if he is justified in using force against the other person under section 9.31 of the penal code when and to the degree the person reasonably believes deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force. *See id.* § 9.32.

In support of the argument he acted in self-defense, appellant points this Court to the following evidence: (1) appellant was afraid of Deleon; (2) appellant was not looking for Deleon when they met; (3) Deleon had marijuana and atropine in his blood; (4) Ortiz did not testify specifically about what appellant and Deleon were arguing; (5) Ortiz could not clearly see their faces; (6) appellant was blocking Ortiz's view of Deleon; (6) appellant felt like his life was in danger; and (7) appellant was carrying a gun because he was in a high-crime area and wanted to protect himself.

However, our review of the evidence demonstrates Ortiz testified appellant and Deleon were arguing over a debt. Although appellant did not have a license to carry a gun, he carried a gun that night. Appellant found Deleon in front of an abandoned apartment where appellant had previously sold drugs. Ortiz said appellant walked away and returned with a weapon, which he hid behind his back. When the argument continued, appellant shot Deleon, who had no time to get away from appellant. Ortiz did not see a weapon in Deleon's possession, but heard Deleon ask appellant not to shoot him. Torbellin was outside his apartment, heard a gunshot, and saw appellant run toward him. Appellant told Torbellin he shot someone, but later told Torbellin that he did not know anything and had not seen anything. Appellant's mother contacted Torbellin

---

[2] The jury in this case was charged on the law of self-defense.

shortly after the offense and told him not to speak with the police. Appellant testified he knew, prior to the meeting, that Deleon was upset about the bad drugs. Appellant further stated Deleon was angry about bad drugs when they met, wanted money, and came at appellant in a threatening manner. Gwin confirmed there was both marijuana and atropine, a resuscitative drug, in Deleon's blood. Appellant said he pulled his gun and shot because Deleon was reaching back, which made appellant feel like his life was in danger. Although Ortiz said she could not see their faces, Ortiz said she could see their movements. Deleon, Bryant, Torbellin, Blessing, and appellant himself identified appellant as Deleon's shooter. Appellant testified he was not afraid until Deleon was reaching back. Appellant stated he never saw a gun in Deleon's possession. Also, Torbellin had not seen a gun on Deleon, and Officer Blessing confirmed no gun was found on Deleon. Appellant, Eric, and Rodriguez fled to Eric and appellant's mother's home in Waxahachie and did not turn appellant into the police until about four days after the incident.

Considering all of the evidence in the light most favorable to the jury's verdict, we conclude a rational jury could have found appellant guilty of all of the elements of the offense of murder beyond a reasonable doubt and rejected appellant's self-defense claim. *See Jackson*, 443 U.S. at 319; *see also London v. State*, 325 S.W.3d 197, 203 (Tex. App.–Dallas 2008, pet. ref'd) (appellant's testimony alone will not conclusively prove self-defense as a matter of law). Therefore, we overrule appellant's sole issue on appeal and affirm the judgment of the trial court.

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
111316F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

STEVEN CASTELLANO, Appellant

No. 05-11-01316-CR       V.

THE STATE OF TEXAS, Appellee

Appeal from the 283rd Judicial District Court of Dallas County, Texas. (Tr.Ct.No. F09-31103-T).
Opinion delivered by Justice Bridges, Justices O'Neill and Murphy.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered March 19, 2013.

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE