**AFFIRM; Opinion Filed November 26, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

## No. 05-17-00836-CR
_____

**JESUS ANTHONY RODRIGUEZ, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 265th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F16-75239-R**

# MEMORANDUM OPINION

Before Justices Lang, Fillmore, and Schenck
Opinion by Justice Schenck

Jesus Anthony Rodriguez appeals his conviction for murder. In his first issue, he challenges the sufficiency of the evidence to disprove his claim he acted in self-defense. In his second and third issues, he challenges the sufficiency of the evidence to support the jury's refusal to find that he acted in sudden passion. We affirm the trial court's judgment. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

### BACKGROUND

R.H. was the oldest of seven siblings of whom he was very protective. He was also close to his mother Claudia Corona. When R.H. was 15 years old, his girlfriend became pregnant, he dropped out of school, and he went to work laying bricks and cement to help support the family.

Corona had separated from R.H.'s father years before, and the father of her younger two children had died. R.H. told his mother he would help to support her and his siblings.

Appellant began dating Corona in October 2015. In January 2016, appellant and his brother Andres Perez came to live with Corona, 16-year-old R.H., and Corona's other children.

On the evening of February 5, 2016, Corona went to take a shower, and appellant approached her, asking for a bag of cocaine. Corona responded that she had found the bag in appellant's drawer and flushed it because she did not want it in the house with her children present. Appellant became angry with Corona and pushed her. Corona offered to pay for the cocaine after she got out of the shower. She got dressed and followed appellant outside to the backyard where she gave him the money. She then went back inside the house. Appellant followed her to her bedroom where they got into an argument that led to a physical altercation.

J.H., R.H.'s 14-year old brother, had been playing video games with his younger two brothers when he heard noises from Corona's room. He walked in and saw appellant hitting his mother. J.H. told appellant not to hit his mother, at which point appellant and J.H. began hitting each other. R.H. then walked into Corona's room, told appellant not to hit his brother, and began hitting appellant. During this time, Corona was screaming. Perez heard her screams and went inside to find R.H. and J.H. hitting appellant on the floor of Corona's bedroom. Perez helped Corona break up the fight and then helped R.H. and J.H. escort appellant out of the house. As the group reached the door to the backyard, appellant pulled out a gun and pointed it at J.H.'s head. R.H. hit appellant's arm to move the gun away from his brother's head. Appellant put the gun away as J.H., R.H., and Corona pushed him out the back door. No one exited the house with him, and J.H. waited for appellant to walk away. Instead, appellant remained in the backyard and called his sister on the phone.

Corona went to check on her other children. R.H. went into Corona's room, got all of appellant's belongings, and threw them out the back door, telling appellant, "You're leaving. I don't want you even close to my mom anymore." Soon after, Corona returned and R.H. was able to see his mother's face, which was bruised and bloodied from her earlier altercation with appellant. R.H. exclaimed to her, "Look what he did to your face," ran back outside, and began to fight with appellant in the back yard. J.H. ran out to help R.H. and began hitting and kicking appellant. Perez and Corona went outside and broke up the fight, which had lasted approximately two minutes.

Corona told her two sons to leave appellant alone so he could leave. Appellant began to walk across the backyard to the unlocked back gate. When he was about four or five feet away from R.H., appellant turned and pulled his gun from his waist. He quickly fired two shots into the air and a third into R.H.'s head. Appellant took off and ran out the back gate. R.H. was still breathing, so J.H. and Perez took R.H. to a hospital where R.H. was pronounced dead.

Appellant was indicted with one count of murder. His case proceeded to a trial before a jury who found appellant guilty as charged in the indictment and assessed his punishment at 32 years' confinement. Appellant filed a motion requesting a new trial, which the trial court denied. Appellant filed this appeal.

DISCUSSION

## I.      Self-Defense

In his first issue, appellant urges that the evidence was insufficient to disprove his claim that he shot R.H. in self-defense.

Self-defense is a defense to prosecution under section 2.03 of the penal code. *See* TEX. PENAL CODE ANN. §§ 2.03, 9.02, 9.31, 9.32. A defendant has the burden of producing some evidence to support a claim of self-defense. *London v. State*, 325 S.W.3d 197, 202 (Tex. App.—

Dallas 2008, pet. ref'd). The State has the burden of persuasion in disproving self-defense. *Id.* This burden does not require the State to produce evidence refuting the self-defense claim; rather, the burden requires the State to prove its case beyond a reasonable doubt. *Id.* Self-defense is an issue of fact to be determined by the jury. *Id.* A jury verdict of guilty is an implicit finding rejecting the defendant's self-defense theory. *Id.*

Because the State bears the burden of persuasion to disprove self-defense by establishing its case beyond a reasonable doubt, we review both legal and factual sufficiency challenges to the jury's rejection of such a defense under the *Jackson v. Virginia* standard. *Smith v. State*, 355 S.W.3d 138, 145 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). Under this standard, evidence is insufficient to support a conviction if, considering all the evidence in the record in the light most favorable to the verdict, no rational factfinder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *Id.* Viewed in the light most favorable to the verdict, the evidence is insufficient under this standard when either: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense; or (2) the evidence conclusively establishes a reasonable doubt. *Id.* An appellate court may not re-evaluate the weight and credibility of the record evidence and thereby substitute its own judgment for that of the factfinder. *Id.*

A person commits murder if he intentionally or knowingly causes the death of an individual, or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. *See* PENAL §§ 19.02(b)(1), 19.02(b)(2). The penal code, however, provides that a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force. *Id.* § 9.31(a). Deadly force in self-defense is justified when a person reasonably believes the force is immediately necessary to protect the actor

against the other's use or attempted use of unlawful deadly force or to prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery. *Id.* § 9.32.

A "reasonable belief" is defined as one that would be held by "an ordinary and prudent man in the same circumstances as the actor." *Id.* § 1.07(a)(42). "Deadly force" is force "intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury." *Id.* § 9.01(3). "Serious bodily injury" is an injury that creates a "substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 1.07(a)(46).

The actor's belief that the force or deadly force was "immediately necessary" is presumed to be reasonable if the actor (1) knew or had reason to believe that the person against whom the force was used was committing or attempting to commit murder; (2) did not provoke the person against whom the force was used; and (3) was not otherwise engaged in criminal activity. *See id.* §§ 9.31(a)(1)(C), (2), (3); 9.31(b)(1)(C),(2),(3). The use of force against another is not justified in response to verbal provocation alone. *See id.* § 9.31(b)(1).

Appellant urges that the record contains the following evidence to support a finding that he shot R.H. in self-defense: R.H. had been using cocaine; R.H. and his brother J.H. had simultaneously attacked appellant; R.H. was enraged at appellant and made death threats to appellant; both R.H. and Corona were praying to the Saint of Death; appellant understood Corona's brothers were on their way to the house; appellant reasonably believed R.H. had a gun and was running towards him; and R.H. continued to run at appellant after he fired two warning shots. Appellant urges that he was entitled to the presumption that his use of deadly force was immediately necessary because he knew or had reason to believe that R.H. was attempting to commit murder based on the evidence that R.H. threatened to kill appellant, ran back into the house

where appellant knew R.H. kept a weapon, and ran back out of the house appearing to carry something. He maintains that he did not provoke R.H.; instead, he urges, R.H. provoked appellant. According to appellant, he was not otherwise engaged in criminal activity by unlawfully carrying a weapon because there was no evidence that he did not have a concealed handgun license. *See* PENAL §§ 9.31(a)(3), 46.02, 46.15(b)(6).

Appellant testified that R.H. told him to "get the hell out of here," meaning to leave their house, but that he remained in the back yard to make a phone call to get a relative to pick him up and drive him away. After the phone call ended, R.H. and J.H. came back out of the house to fight with appellant again. Perez and Corona then pulled R.H. and J.H. away from appellant. Appellant backed away, saying he was going to leave and that he would come back the next day for his belongings. He testified that R.H. then ran back into the house and returned with some of appellant's clothes and threw them out the door and, using "bad words," told appellant to leave. According to appellant, he remained outside with Corona and his brother and J.H. arguing about what was going on when R.H. came back out with another pile of clothes. Appellant stated that at that point, R.H. told appellant he was going to kill appellant and ran inside the house. Appellant saw R.H. run back out of the house with something in his hand, he claimed, resembled a handgun. He testified he knew R.H. possessed a handgun because he had bought the gun with Corona for R.H., and the trial court admitted photographs of R.H. with a gun. Seeing R.H. run towards him with what he believed to be a handgun, appellant fired what he testified were two warning shots. According to appellant, R.H. continued to run towards him for four or five seconds after the first two shots, so he shot R.H.

By his own testimony, appellant admits that he intentionally shot R.H. All the other witnesses, including appellant's brother, testified that appellant shot R.H. in the head. Thus, the evidence establishes the elements of murder. *See* PENAL §§ 19.02(b)(1), 19.02(b)(2).

Here, where the evidence relating to the issue of self-defense is largely comprised of witness testimony, the jury's decision to reject appellant's defensive claims ultimately hinges on the credibility of the witnesses. As the factfinder, the jury is entitled to judge the credibility of witnesses, and can choose to believe all, some or none of the testimony presented by the parties. *See Smith*, 355 S.W.3d at 146. The only evidence in the record that a jury could rely on that appellant knew or had reason to believe that at that time R.H. was holding a gun was appellant's testimony. The evidence in the record also includes the testimony of the State's witnesses, all of whom undermined appellant's defensive claims. Perez, appellant's brother, testified that R.H. ran towards appellant and threatened to kill appellant, but that R.H. stopped running and became quiet after appellant fired the first two shots into the air. None of the witnesses observed R.H. to have any kind of weapon during the evening in question. The jury heard from J.H., Corona, and M.H. (R.H.'s sister) that just before appellant shot R.H., appellant was walking away from the house towards the back gate while R.H. remained standing still. Corona testified she prayed to the Saint of Death to help calm herself, and she did tell appellant her brothers were on their way to the house to beat him up, so he had better leave.[1] The jury chose not to believe appellant had acted in self-defense, and appellant's testimony, in light of the other evidence presented at trial, does not render the evidence in this case insufficient to support the jury's verdict. *See Smith*, 355 S.W.3d at 146.

We overrule appellant's first issue.

## II.    Sudden Passion

In his second and third issues, appellant challenges the legal and factual sufficiency of the evidence supporting the jury's findings against his invocation of sudden passion during the punishment phase of trial.

---

[1] We note that multiple witnesses, including appellant, testified both Corona and R.H. told appellant to leave Corona's house, from which a jury could find that appellant did not have a right to present at the location where the force was used and thus could have considered that appellant failed to retreat even after R.H. had threatened to kill him and ran back inside the house where appellant believed R.H. kept a gun. *See* PENAL § 9.31(d), (f).

At the punishment stage of a trial for murder, the defendant may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause. PENAL § 19.02(d). If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is reduced from a first-degree to a second-degree felony. *See id.* "Sudden passion" means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation. *Id.* § 19.02(a)(2). "Adequate cause" means a cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection. *Id.* § 19.02(a)(1).

In reviewing an appellant's legal sufficiency challenge to evidence supporting an adverse finding on which he had the burden of proof, such as sudden passion, we apply the legal-sufficiency standard utilized in civil cases. *See Matlock v. State*, 392 S.W.3d 662, 667 & n.14 (Tex. Crim. App. 2013). We first search the record for evidence favorable to the finding, disregarding all contrary evidence *unless a reasonable factfinder could not. Id.* at 669. If we find no evidence supporting the finding, we then determine whether the contrary was established as a matter of law. *Id.*

In examining the record under the first prong of the civil legal sufficiency standard, we conclude that some evidence exists to support the jury's negative finding on the issue of sudden passion. As discussed above, multiple witnesses testified that just before appellant shot R.H., appellant was walking away from the house with no one chasing him and R.H. was standing still. Even if R.H. had been yelling at appellant, such action would not rise to the level of adequate cause. *See McKinney v. State*, 179 S.W.3d 565, 570 (Tex. Crim. App. 2005) (yelling and pushing do not rise to the level of adequate cause). Further, appellant testified that he had the presence of

mind to fire two warning shots before waiting four or five seconds to fire a third shot at R.H.'s head. The record satisfies the first prong of civil legal sufficiency standard of review because some evidence exists that appellant was not under the immediate influence of sudden passion arising from an adequate cause when he shot R.H. Therefore, we need not address the second prong. *See Moncivais v. State*, 425 S.W.3d 403, 408 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd).

We overrule appellant's second issue and now turn to address his third issue challenging the factual sufficiency of the jury's finding against sudden passion.

When we review an issue on which the defendant has the burden of proof by a preponderance of the evidence, we consider all the evidence neutrally to determine if the judgment is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Moncivais*, 425 S.W.3d at 408. We may not, however, intrude on the factfinder's role as the sole judge of the weight and credibility of the witnesses' testimony. *Id.* at 409.

Appellant largely relies on his own testimony that he was very afraid in the backyard and that he wanted to leave, but that every time he tried to leave, "they always tried to get closer." He also testified that R.H. was threatening to kill him and was running towards him with what appellant believed to be a weapon. He testified that when he fired a final shot at R.H., he did so because he believed R.H. was raising his hand to shoot appellant.

As the sole judge of the weight and credibility of a witness's testimony, the jury was entitled to disbelieve appellant's testimony. *Id.* at 409. As discussed above, the jury heard evidence that appellant was walking away from the house and that R.H. was standing still before appellant turned and fired two shots above R.H. and a third into R.H.'s head. Witnesses also testified that appellant's gun was the only weapon displayed during the fight. *See McKinney,* 179 S.W.3d at 570 (stating evidence that complainant did not have a gun and only yelled and pushed

–9–

defendant supports finding that defendant was not acting under immediate influence of sudden passion).  While the jury could have decided otherwise, we cannot say based on this evidence that the jury's finding of no sudden passion is so against the great weight and preponderance of the evidence as to be manifestly unjust.  *See Moncivais*, 425 S.W.3d at 409.

We overrule appellant's third issue.

## CONCLUSION

We affirm the judgment of the trial court.

/David J. Schenck/
_____
DAVID J. SCHENCK
JUSTICE

DO NOT PUBLISH
TEX. R. APP. P. 47

170836F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JESUS ANTHONY RODRIGUEZ, Appellant

No. 05-17-00836-CR  V.

THE STATE OF TEXAS, Appellee

On Appeal from the 265th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F16-75239-R.
Opinion delivered by Justice Schenck, Justices Lang and Fillmore participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 26th day of November, 2018.