

# IN THE
# TENTH COURT OF APPEALS

### No. 10-22-00370-CR

**JOHNNY ALVIN WILSON,**

                                                            **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                            **Appellee**

**From the 54th District Court
McLennan County, Texas
Trial Court No. 2020-1292-C2**

## MEMORANDUM  OPINION

In one issue, appellant, Johnny Alvin Wilson, challenges his conviction for capital murder.  *See* TEX. PENAL CODE ANN. § 19.03.  Specifically, Johnny contends that the evidence is insufficient to support the jury's rejection of his self-defense claim.  We affirm.

## Background

Johnny was charged by indictment with murdering Christopher Wilson and Rachel Strickland, the parents of his wife, Ashley Wilson. In the jury charge, the trial court included a self-defense instruction. The jury rejected Johnny's self-defense claim, found him guilty of the charged offense, and assessed punishment at life in prison. The trial court certified Johnny's right to appeal, and this appeal followed.

## Self-Defense

In his sole issue on appeal, Johnny argues that the evidence is insufficient to support the jury's rejection of his self-defense claim. We disagree.

APPLICABLE LAW

A person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force. TEX. PENAL CODE ANN. § 9.31(a). A "reasonable belief" is one that an ordinary and prudent person would hold in the same circumstances as the actor. *Id.* § 1.07(a)(42).

A defendant has the burden of producing some evidence to support a claim of self-defense. *See Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *see also London v. State*, 325 S.W.3d 197, 202 (Tex. App.—Dallas 2008, pet. ref'd). The State has the burden of persuasion in disproving self-defense. *See Zuliani*, 97 S.W.3d at 594; *see also London*, 325 S.W.3d at 202. Self-defense is an issue of fact to be determined by the jury. *London*, 325

S.W.3d at 202. A jury's guilty verdict is an implicit finding rejecting the defendant's self-defense theory. *Id.*

Because the State bears the burden of persuasion to disprove self-defense by establishing its case beyond a reasonable doubt, we review sufficiency challenges to the jury's rejection of self-defense under the *Jackson v. Virginia* standard. *Smith v. State*, 355 S.W.3d 138, 145 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). In resolving the sufficiency of the evidence issue, we look not to whether the State presented evidence which refuted appellant's self-defense evidence, but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of the offense beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt. *Braughton v. State*, 569 S.W.3d 592, 609 (Tex. Crim. App. 2018).

The reviewing court must defer to the jury's determinations of the witnesses' credibility and the weight to be given to their testimony, as the jury is the sole judge of such matters. *Mitchell v. State*, 590 S.W.3d 597, 604 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (internal citations omitted). Furthermore, self-defense is a fact issue to be determined by the jury, and the jury is free to accept or reject any defensive evidence on the issue. *Id.* (citing *Saxton v. State*, 804 S.W.2d 910, 913-14 (Tex. Crim. App. 1991)).

DISCUSSION

Johnny does not challenge the sufficiency of the evidence supporting the elements of his conviction for capital murder. Rather, he argues that no rational juror could have found beyond a reasonable doubt that he did not reasonably believe the use of deadly force was immediately necessary to protect himself from the use or attempted use of unlawful force by Christopher.

The record reflects that on the day in question, Ashley and Johnny were at Johnny's house with Ashley's mother, Rachel Strickland. Rachel was over helping Ashley and Johnny care for their baby. The three of them decided to barbecue. Ashley's siblings, Landon and Haley Wilson, as well as Ashley's father, Christopher Wilson, were invited over to the house, although Johnny only approved of Rachel at the gathering. According to Ashley, Christopher, Rachel, and Johnny did not have a good relationship because Christopher and Rachel did not approve of Ashley having a relationship with Johnny, her second cousin. Ashley testified that Christopher's disapproval of the relationship was expressed repeatedly in text messages and phone calls threatening to come over and hurt Johnny, who is 5'6" tall, weighs 120 pounds, and has a disabled right arm. In fact, in August 2019, Ashley and Johnny called the Bellmead Police Department to report that Christopher and Christopher's brother, Keith Wilson, were threatening Johnny.

In any event, on the day in question, Landon, Haley, and Rachel were swimming in an inflatable pool while Ashley, Johnny, and Christopher were sitting next to each other talking. Ashley testified that Johnny was trying to get along with the family that day, which Haley characterized as unusual. At some point, Rachel exited the pool when Johnny mentioned that Ashley was crying. Then, Landon and Haley began to roughhouse, and as Haley noted, "[Johnny] was like, if we don't get out of the pool, then he's gonna cut the pool and we're gonna fly toward the fence." As Landon was exiting the pool, he heard gunshots. Landon saw Johnny shoot Christopher five times in the chest and stomach while Christopher was talking on a cell phone sitting in the back of Johnny's Chevy Blazer that was open.

Neither Haley nor Landon heard Johnny and Christopher yelling or arguing that day. However, Ashley testified that Christopher had been drinking heavily that day and that Christopher "said that he was going to come back later that night with his brother Keith Wilson and they were gonna mess up Johnny and take me and our son." Ashley recalled that Johnny did not immediately pull out his gun and start shooting when Christopher purportedly made this threat. Rather, Johnny "walked away to try and cool off." Ashley acknowledged that approximately twenty or thirty minutes elapsed between Christopher's purported threat and Johnny firing the first shots. Ashley also admitted that Christopher did not state that he was "gonna mess" Johnny up "right now" and that Christopher "never physically put his hand on [Johnny]."

After Johnny shot Christopher, Johnny went inside his house to reload his revolver. While Johnny was reloading his revolver, Rachel went over and tried to revive Christopher. Shortly thereafter, Johnny exited the house and shot Rachel in the back from two feet away while she was crouched over Christopher.

The State also presented testimony from Irma Denise Martinez, one of Johnny's neighbors. She recalled having Johnny over for a meal and hearing him say that "he wished he can kill them because he didn't like them." Martinez understood "them" to mean "Landon and Christopher Wilson and Ashley's mom."

Johnny's self-defense theory is premised on the strained relationship he had with Christopher and Rachel, as well as the verbal threat purportedly made by Christopher on the day in question. We first note that verbal provocation does not justify self-defense. *See* TEX. PENAL CODE ANN. § 9.31(b)(1) ("The use of force against another is not justified . . . in response to verbal provocation alone."); *Braughton*, 569 S.W.3d at 606. Furthermore, "prior disagreements" also do not justify self-defense, especially considering Ashley's testimony that Christopher had "never physically put his hand on [Johnny]." *See Elmore v. State*, 257 S.W.3d 257, 259 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (noting that evidence regarding "prior disagreements" between defendant and the victim supported a determination that the defendant was not entitled to a self-defense instruction as a matter of law); *see also Williams v. State*, No. 06-10-00156-CR, 2011 Tex. App. LEXIS 1657, at *14 (Tex. App.—Texarkana 2011, no pet.) (mem. op., not designated

for publication) (concluding that a rational juror could have concluded, beyond a reasonable doubt, that Williams lacked a reasonable belief that force was immediately necessary to protect himself from the use or attempted use of unlawful force where the evidence showed that Williams and the victim engaged in "verbal disagreements," but these disagreements never escalated to "fists being used").

Moreover, the evidence does not establish that Johnny's use of force was immediately necessary to protect him against the use or attempted use of unlawful force by Christopher. *See Henley v. State*, 493 S.W.3d 77, 89 (Tex. Crim. App. 2016) (noting that "[b]oth self-defense and defense of a third person require that there be a reasonable belief in the immediate need to act" and that in the context of self-defense and defense of a third person, "force that is immediately necessary to protect oneself or another from a person's use of unlawful force is force that is needed at that moment—when a split second decision is required" (internal quotations & citation omitted)). Indeed, Ashley stated that Johnny walked away to cool off after Christopher threatened him and that about twenty to thirty minutes elapsed between the threat and the shooting of Christopher. And finally, Johnny does not direct us to any evidence presented at trial showing the use or attempted use of unlawful force by Rachel, who was present at the gathering to take care of Ashley and Johnny's baby.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found the essential elements of capital murder and

against Johnny's claim of self-defense beyond a reasonable doubt. *See* TEX. PENAL CODE ANN. § 19.03; *see also Braughton*, 569 S.W.3d at 609; *Smith*, 355 S.W.3d at 145. As such, we overrule Johnny's sole issue on appeal.

## Conclusion

We affirm the judgment of the trial court.


STEVE SMITH
Justice

Before Chief Justice Gray,
     Justice Smith,
     and Justice Wright[1]
Affirmed
Opinion delivered and filed August 23, 2023
Do not publish
[CRPM]



---

[1] The Honorable Jim R. Wright, Senior Chief Justice (Retired) of the Eleventh Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. §§ 74.003, 75.002, 75.003.