ACCEPTED
14-14-00610-CR
FOURTEENTH COURT OF APPEALS
HOUSTON, TEXAS
3/9/2015 4:50:14 PM
CHRISTOPHER PRINE
CLERK

No. 14-14-00610-CR

FILED IN
14th COURT OF APPEALS
HOUSTON, TEXAS
3/9/2015 4:50:14 PM
CHRISTOPHER A. PRINE
Clerk

IN THE

# Court of Appeals
## For the Fourteenth Judicial District of Texas
### At Houston

_____

# ALAN POZZERLE,
*Appellant*

*v.*

# THE STATE OF TEXAS
*Appellee*

_____

Cause numbers 1384872
In the 183rd Judicial District Court
Of Harris County, Texas

_____

# *Appellant's Brief*

_____

KELLY ANN SMITH
Texas Bar No. 00797867

P.O. Box 10751
Houston, TX  77206
281-734-0668

*Counsel for Appellant*

ORAL ARGUMENT REQUESTED

# IDENTITY OF PARTIES AND COUNSEL

The Appellant has provided a complete list of all interested parties' names below, under TEX. R. APP. P. 38.1.

The appellant or convicted person:

**Alan Pozzerle** — Appellant
TDCJ No. 01943752
Estelle Unit
264 FM 3478,
Huntsville, TX 77320-3320

Counsel for the appellant:

**Kelly Ann Smith**— Counsel on appeal
PO Box 10751
Houston, Texas 77206
Phone: (281) 734-0668

**Allen Tanner** — Counsel at trial
917 Franklin, Ste. 550
Houston, Texas 77002
(713) 225-1100

Counsel for the State:

**Devon Anderson** — District Attorney of Harris County
Harris County Criminal Justice Center

**Luis Batarse** — Assistant District Attorneys at trial
**Lisa Collins** Harris County Criminal Justice Center
1201 Franklin, Suite 600
Houston, Texas 77002
Telephone: (713) 755-5800

Trial Judge:

**Hon. Vanessa Velasquez** — Presiding Judge of the 183rd District Court

# TABLE OF CONTENTS

Page

IDENTITY OF PARTIES AND COUNSEL .......................................................................1

INDEX OF AUTHORITIES.........................................................................................4

STATEMENT OF THE CASE ......................................................................................6

ISSUES PRESENTED................................................................................................6

The trial court erred by refusing the appellant's request to instruct the jury on defense of property as justification for William Johnson's murder.................................................................6

The trial court erred by refusing to instruct the jury on the sudden-passion special issue..................................................................6

SUMMARY OF THE FACTS .......................................................................................7

ARGUMENT: FIRST ISSUE PRESENTED ....................................................................10

The trial court erred by refusing the appellant's request to instruct the jury on defense of property as justification for William Johnson's murder..............................................................10

   I.   Summary of the argument ..............................................................10

   II.   Summary of the pertinent facts ........................................................10

   III.   The trial court erred by refusing to instruct the jury on defense of property as justification for William Johnson's murder................................................................11

      A.   The standard of review ...........................................................11

      B.   Law regarding jury instructions on defensive issues .........................12

      C.   The appellant was entitled to a defense of property instruction because it was raised by the evidence that the entire incident revolved around his efforts to retrieve his recently stolen mobile phone.............................................................................13

ARGUMENT: SECOND ISSUE PRESENTED ................................................................16

The tr**ial court erred by refusing the appellant's request to instruct the jury on the sudden passion special issue.........................16

# TABLE OF CONTENTS
## (continued)

SECOND ISSUE (continued)

I.     Summary of the argument ............................................................... 16

II.    Summary of the pertinent facts ................................................... 17

III.   The trial court erred by refusing the appellant's request to instruct the jury on the sudden passion special issue. ................................ 17

     A.   The standard of review ................................................................. 17

     B.   The law: Sudden Passion .............................................................. 178

     C.   The appellant was entitled to a sudden passion instruction ............. 20

PRAYER .................................................................................................. 21

CERTIFICATE OF SERVICE ............................................................................ 21

# INDEX OF AUTHORITIES

**Cases**

*Almanza v. State*,
  686 S.W.2d 157 (Tex. Crim. App. 1984)
  (op. on reh'g)................................................................................11, 16, 17, 18

*Benavides v. State*,
  992 S.W.2d 511 (Tex. App.-Houston
  [1st Dist.] 1999, pet. ref'd)........................................................................ 19

*Bufkin v. State*,
  207 S.W.3d 779 (Tex. Crim. App. 2006) ...................................................... 12

*Kunkle v. State*,
  771 S.W.2d 43 (Tex. Crim. App. 1986), *cert. denied*, 492 U.S. 925 (1989) ............... 13

*London v. State*,
  325 S.W.3d 197 (Tex. App.-Dallas 2008, pet. ref'd)...................................................... 18

*Love v. State*,
  199 S.W.3d 447 (Tex. App.— Houston
  [1st Dist.] 2006, pet. ref'd) ........................................................................ 12

*McKinney v. State*,
  179 S.W.3d 565 (Tex. Crim. App. 2005) ...................................................... 19

*Miller v. State*,
  815 S.W.2d 582 (Tex. Crim. App. 1991) .............................................. 12, 16

*Neal v. State*,
  256 S.W.3d 264 (Tex. Crim. App. 2008) .............................................. 12, 18

*Ngo v. State*,
  175 S.W.3d 738 (Tex. Crim. App. 2005) .............................................. 11, 17

*Rogers v. State*,
  105 S.W.3d 630 (Tex. Crim. App. 2003) ...................................................... 12

*Shaw v. State*,
  243 S.W.3d 647 (Tex. Crim. App. 2007) ...................................................... 12

*Swearingen v. State*,
  270 S.W.3d 804 (Tex. App.-Austin 2008, pet. ref'd) ..................................... 11, 17, 18

*Trevino v. State*,
  100 S.W.3d 232, 242 n. 40 (Tex. Crim. App. 2003) ........................................ 19, 20, 21

*Walters v. State*,
  247 S.W.3d 204 (Tex. Crim. App. 2007) .............................................. 12, 13

# INDEX OF AUTHORITIES
## (Continued)

**Statutes**

TEX. PENAL CODE § 19.02 ................................................................... 18, 20

TEX. PENAL CODE § 9.41 .................................................................... 10, 14

TEX. PENAL CODE § 9.42 ................................................................. 10, 14, 15

**TO THE HONORABLE COURT OF APPEALS:**

## STATEMENT OF THE CASE

The State accused the appellant of murder. (CR 34). The indictment alleged that the appellant caused William Johnson's death by striking Johnson with a motor vehicle and, in a separate paragraph, with a club (CR 34). The appellant pled not guilty to the indictments' allegations, and the case was tried together before a jury and the Honorable Vanessa Velasquez, presiding judge of the 183rd District Court in Harris County Texas (RR Vol. II at 5-6). The jury found the appellant guilty of murder than assessed his punishment at thirty-five years in prison (CR 91, 98, 99; RR Vol. VI at 96; Vol. VII at 4). The appellant filed a notice of appeal, and the trial court certified the appellant's right to appeal (CR 102-3).

## ISSUES PRESENTED

1. **The trial court erred by refusing the appellant's request to instruct the jury on defense of property as justification for William Johnson's murder.**

2. **The trial court erred by refusing to instruct the jury on the sudden-passion special issue.**

6

## SUMMARY OF THE FACTS

In April 2013, Alvin Hickman was homeless and lived under a bridge near Airline Drive in Houston (RR Vol. IV 84). Sometimes he would stay at the nearby Western Inn (RR Vol. IV 87). On April 19th, Hickman grew tired of panhandling and went to the appellant's room at the Western Inn (RR Vol. IV at 89). The appellant was looking for his mobile phone. Someone had stolen it and wanted $80 for its return (RR Vol. IV at 91-2). Hickman joined the appellant in his van and the two went to a nearby convenience store to retrieve the appellant's phone (RR Vol. IV at 96-8). The appellant met the phone thief on a street nearby the store (RR Vol. IV at 100-101).

Hickman recognized the phone thief as a "hustler" who went by the moniker, "G"[1] (RR Vol. IV 102). G had the appellant's phone (RR Vol. IV at 103). Hickman saw the appellant get a "a pipe or a stick" before he got out of the van to confront G (RR Vol. IV at 104). According to Hickman, the appellant "whooped" G with the pipe; "[h]e was tearing him up with the stick" (RR Vol. IV at 104-5). G took off running (RR VOl. IV at 106). The appellant got back into the van and drove it into G and pinned him against a fence (RR Vol. IV at 106, 107). Hickman got out of the van and ran away (RR Vol. IV at 108). Hickman did some drugs and sat under the bridge because he was afraid (RR Vol. IV at 109). At some point Hickman went back

---

[1] The medical examiner identified "G" by fingerprint comparison as William Johnson (RR Vol. IV at 172-3).

to try to help G, but G was too heavy and couldn't walk. So Hickman left him there and went back under the bridge (RR Vol. IV at 113). G was still alive and moaning (RR Vol. IV at 116, 133).

Hickman described the appellant's demeanor as unusual:

> But to see a white guy in the hood get out there in the paint like that, that was, like -- you know, because he was --the guy right here have never disrespected me. He don't even do drugs. He don't even drink. But that day, he lost it. So, it really tripped me out, you know. I'd never seen a bad side to him. Never have. But that day, he tripped all the way out.
>
> *********
>
> He was silent. His -- his face, I can't describe it, but he was not hisself. He was, like, transformed to something else. I don't know what it was, but he was not hisself. I had never seen him act like that before, never.

(RR Vol. IV at 128-9, 136).

The appellant testified that he left his mobile phone in his room At the Western Inn and when he returned the phone was gone (RR Vol. V at 130-32). The appellant felt desperate. He used his mobile phone for work and kept records on the phone that translated to two weeks of pay (RR Vol. V at 133). The appellant was not affluent. It was very important to the appellant to find the phone (RR Vol. V at 134). Eventually someone answered his phone and demanded $80 for the phone's return (RR Vol. V at 134). The appellant phoned 911 for assistance and proceeded to the nearby convenience store to retrieve it (RR Vol. IV at 136). Neither the police nor the phone thief arrived (RR Vol. V at 136). The appellant called his phone again and

8

made other arrangements with the thief to meet (RR Vol. V at 137). The appellant, who was exhausted and frazzled, took Hickman with him when he went to retrieve his phone (RR Vol. V at 138).

The appellant met up with the complainant in a street near the Western Inn and grabbed a floor jack handle before he got out of his van (RR Vol. V at 145). He carried the handle for protection because it was a bad neighborhood (RR Vol. V at 145). The appellant gave the complainant $80. The complainant then pulled a knife and the appellant struck him with the floor jack handle in self-defense (RR Vol. V at 147-8). The complainant took off running with the appellant's phone (RR Vol. V at 151). (RR Vol. at 151). Still anxious to retrieve his phone, the appellant went after the complainant in his van. Hickman interfered with the steering wheel, and the appellant struck the complainant with his van (RR Vol. V at 154).

The appellant got out of his van and retrieved his phone (RR Vol. V at 155). The appellant testified that during the whole incident while he was trying to retrieve his phone, his "mind was doing a hundred miles a minute"; he was mad and scared when the complainant pulled a knife (RR Vol. V at 156).

# ARGUMENT: FIRST ISSUE PRESENTED

**The trial court erred by refusing the appellant's request to instruct the jury on defense of property as justification for William Johnson's murder.**

## I.      Summary of the argument

The trial court improperly denied the appellant's request for a jury instruction on defense of property under Penal Code sections 9.41 and 9.42.  TEX. PENAL CODE §§ 9.41 & 9.42.

## II.      Summary of the pertinent facts

After the appellant rested its case-in-chief, the trial court conducted a charge conference  (RR Vol. V at 192-96).   The appellant requested, among other things:

> We're asking for a charge under self-defense and also a charge under deadly force to protect property under 9.42 of the Penal Code.   . . .
>
>  . . I just wanted to be more specific as to our request for deadly force to protect property. We believe it was a theft at nighttime for a burglary. So, we're asking for that charge.

(RR Vol V at 194, 196).  The trial court ruled:

> I'm going to allow the self-defense. I'm not going to allow the defense of property. . . . Okay. I looked at the section in the Penal Code and I don't think it applies. So, I'm going to deny your request.

(RR Vol V at 194, 196).

The next morning, before jury argument, the trial court asked the appellant if he had any objections to the charge (RR Vol. VI at 4). The following colloquy ensued:

> [THE APPELLANT]: Same ones I made yesterday on the record, Judge.
>
> THE COURT: That would be with regards to defense of property at nighttime?
>
> [THE APPELLANT]: Yes, ma'am, using deadly force.
>
> THE COURT: All right. And I denied that. So, that's still denied.

(RR Vol. VI at 4).

## III. The trial court erred by refusing to instruct the jury on defense of property as justification for William Johnson's murder

### A. The standard of review

This Court should review jury-charge error under the familiar two-pronged test set out in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g); *Swearingen v. State*, 270 S.W.3d 804, 808 (Tex. App.-Austin 2008, pet. ref'd). First, this Court should determine whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). When error exists, this Court should then evaluate the harm caused by the error. *Id.* The harm required for reversal depends on whether that error was preserved in the trial court. *Swearingen*, 270 S.W.3d at 808. When error is preserved by timely objection, the record must show merely "some harm." *Almanza*, 686 S.W.2d at 171. Unobjected-to charge error requires reversal when it

11

resulted in "egregious harm." *Neal v. State*, 256 S.W.3d 264, 278 (Tex. Crim. App. 2008).

## B. Law regarding jury instructions on defensive issues

A defendant is entitled, upon a timely request, to an instruction on any defensive issue raised by the evidence, provided that (1) the defendant timely requests an instruction on that specific theory and (2) the evidence raises that issue. *Rogers v. State*, 105 S.W.3d 630, 639 (Tex. Crim. App. 2003). To preserve error, the defendant must sufficiently identify the defensive theory for which he seeks an instruction. *Id.* at 640.

A defendant is entitled to an instruction on every defensive issue raised regardless of whether the evidence is strong, feeble, unimpeached or contradicted, and even when the trial court thinks that the testimony is not worthy of belief. *Walters v. State*, 247 S.W.3d 204, 209 (Tex. Crim. App. 2007). This rule is designed to insure that the jury, not the judge, will decide the relative credibility of the evidence. *Miller v. State*, 815 S.W.2d 582, 585 (Tex. Crim. App. 1991). When a defensive theory is raised by the evidence from any source and a charge is properly requested, it must be submitted to the jury. *Shaw v. State*, 243 S.W.3d 647, 662 (Tex. Crim. App. 2007).

This Court should review the denial of a requested defensive instruction in the light most favorable to the defendant and for an abuse of the trial court's discretion. *Bufkin v. State*, 207 S.W.3d 779, 782 (Tex. Crim. App. 2006); *Love v. State*, 199 S.W.3d 447, 455 (Tex. App.— Houston [1st Dist.] 2006, pet. ref'd).

12

## C. The appellant was entitled to a defense of property instruction because it was raised by the evidence that the entire incident revolved around his efforts to retrieve his recently stolen mobile phone

Here, the appellant tried his case on a theory of defense of property and self. He testified that immediately prior to the altercation, his mobile phone had been stolen, and the complainant was holding it in lieu of a ransom. The apparent thief spoke to the appellant and demanded $80 for the phone's return. The appellant needed his mobile phone for work and was desperately anxious for its return. He met William Johnson in an attempt to retrieve his phone. The meeting was captured on videotape and witnessed by Alvin Hickman. The appellant admitted engaging in the acts that led to Johnson's death, but claimed Johnson was alive when he left him. The appellant admitted to striking Johnson with a jack handle and his van, but claimed Hickman, his accomplice,[2] turned the wheel and was more responsible than him for the van striking Johnson. The appellant recovered his phone.

The record reflects that the appellant's case-in-chief was neither complex nor lengthy and that the trial court had just heard testimony from the appellant that the

---

[2] Alvin Hickman was an accomplice. An "accomplice witness" is someone who has participated with another before, during, or after an offense's commission. *See Kunkle v. State*, 771 S.W.2d 435, 439 (Tex. Crim. App. 1986), *cert. denied*, 492 U.S. 925 (1989). While the appellant testified that Hickman was responsible for the van striking the complainant, the two acted together in confronting the complainant. The appellant is responsible for Hickman's actions under party liability. Thus, the appellant's attempts to minimize his responsibility for the van striking the complainant do not undermine the evidence entitling him to the defensive instruction. That is to say the appellant *did* admit to conduct that, under the law of parties, was sufficient to sustain a conviction for murder and satisfies the "confession-and-avoidance requirement. *See Walters v. State*, 247 S.W.3d 204, 210 (Tex. Crim. App. 2007).

appellant was attempting to retrieve his mobile phone from the complainant. The Appellant gave the trial court specific reasons why he believed the Appellant was entitled to an instruction on defense of property. Thus, the requested instruction was preserved for review.

The appellant was entitled to a protection of property defense under section 9.41, and a use of deadly force defense under section 9.42. During the charge conference the appellant requested an instruction on section 9.42 on use of deadly force to protect property. *See* TEX. PENAL CODE §§ 9.41 & 9.42. Section 9.41 provides in pertinent part:

> (b) A person unlawfully dispossessed of land or tangible, movable property by another is justified in using force against the other when and to the degree the actor reasonably believes the force is immediately necessary to reenter the land or recover the property if the actor uses the force immediately or in fresh pursuit after the dispossession and:
>
>> (1) the actor reasonably believes the other had no claim of right when he dispossessed the actor;

TEX. PENAL CODE § 9.41.

Section 9.42, allows a person to use deadly force against another to protect tangible, movable property:

> (1) if he would be justified in using force against the other under Section 9.41; and
>
> (2) when and to the degree he reasonably believes the deadly force is immediately necessary:
>
>> (A) to prevent the other's imminent commission of arson, burglary, robbery, aggravated robbery, theft

during the nighttime, or criminal mischief during the nighttime; or

(B) to prevent the other who is fleeing immediately after committing burglary, robbery, aggravated robbery, or theft during the nighttime from escaping with the property; and

(3) he reasonably believes that:

(A) the land or property cannot be protected or recovered by any other means; or

(B) the use of force other than deadly force to protect or recover the land or property would expose the actor or another to a substantial risk of death or serious bodily injury.

Tex. Penal Code § 9.42.

Here, the appellant was justified in using force under Sections 9.41 and 9.42, and the evidence raised the right to an instruction on the use of deadly force to protect property. The appellant and Hickman testified that the complainant possessed the appellant's recently stolen mobile phone and would not return it unless the appellant paid him $80. The appellant testified that he desperate, frantic and scared because the complainant pulled a knife. Such conduct constituted the "imminent" commission of one or more of the section 9.42 enumerated offenses. Thus, the evidence—whether strong, feeble, unimpeached, contradicted, or not worthy of belief—raised a defensive issue, and the trial court should have instructed the jury accordingly. Viewing the evidence in the light most favorable to the Appellant, the trial court abused its discretion in refusing to give a section 9.42 defensive instruction in the jury charge.

15

The trial court's refusal to give the jury a defensive instruction deprived the Appellant of the ability to present a defense and argue that defense to the jury. He was entitled to have the jury rule on his claim of defense of property. By refusing the requested instruction, the trial court removed any opportunity for the jury to decide the relative credibility of the evidence or the merits of the defense. *See Miller*, 815 S.W.2d at 585. Accordingly, the Appellant suffered "some" harm from the trial court's erroneous refusal to give the instruction. *See Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (holding when charging error is preserved for review, reversal is required if the error caused "some" harm).

## ARGUMENT: SECOND ISSUE PRESENTED

**The trial court erred by refusing the appellant's request to instruct the jury on the sudden passion special issue.**

I.    Summary of the argument

The trial court improperly denied the appellant's request for a jury instruction on the sudden passion special issue.

## II.    Summary of the pertinent facts

While the jury was deliberating the appellant's guilt, the appellant asked the trial

court to include a jury instruction on sudden passion in its punishment charge:

> THE COURT: Mr. Tanner, any objection to the charge
>
> MR. TANNER: Yes, ma'am. We're requesting under 19.02 the adequate cause, sudden passion –
>
> THE COURT: Okay.
>
> MR. TANNER: -- to be added. We think the evidence did show that the Defendant acted in sudden passion based on adequate cause. We would like to submit that to the jurors where the range of punishment would be two to 20.
>
> THE COURT: All right. Well, thank you very much, but the Court respectfully disagrees. And I'm not going to include that in the charge.

(RR Vol. VI at 31-2).

## III.    The trial court erred by refusing the appellant's request to instruct the jury on the sudden passion special issue.

### A. The standard of review

This Court should review jury-charge error under the familiar two-pronged test

set out in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (op. on reh'g);

*Swearingen v. State*, 270 S.W.3d 804, 808 (Tex. App.-Austin 2008, pet. ref'd).  First, this

Court should determine whether error exists.  *Ngo v. State*, 175 S.W.3d 738, 743 (Tex.

Crim. App. 2005).  When error exists, this Court should then evaluate the harm

caused by the error.  *Id.*  The harm required for reversal depends on whether that

error was preserved in the trial court. *Swearingen*, 270 S.W.3d at 808. When error is preserved in the trial court by timely objection, the record must show merely "some harm." *Almanza*, 686 S.W.2d at 171. Unobjected-to charge error requires reversal when it resulted in "egregious harm." *Neal v. State*, 256 S.W.3d 264, 278 (Tex. Crim. App. 2008).

### B. The law: Sudden Passion

If a defendant has been convicted of murder, he may argue at the punishment stage of trial that he caused the complainant's death while under the immediate influence of sudden passion arising from an adequate cause. TEX. PENAL CODE § 19.02(d); *London v. State*, 325 S.W.3d 197, 207 (Tex. App.-Dallas 2008, pet. ref'd). If the defendant proves this issue by a preponderance of the evidence, the offense is reduced from a first-degree felony to a second-degree felony. TEX. PENAL CODE § 19.02(d); *London*, 325 S.W.3d at 207. The Penal Code defines "sudden passion" as "passion directly caused by and arising out of provocation by the individual killed ... which passion arises at the time of the offense and is not solely the result of former provocation." TEX. PENAL CODE § 19.02(a)(2). "Adequate cause" is defined as "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *Id.* § 19.02(a)(1). To be entitled to an affirmative finding on this issue, the defendant must demonstrate that "the homicide occurred while the passion still

18

existed and before there was reasonable opportunity for the passion to cool; and that there was a causal connection between the provocation, the passion, and the homicide." *McKinney v. State*, 179 S.W.3d 565, 569 (Tex. Crim. App. 2005).

Self-defense and sudden passion are intricately intertwined, and facts that give rise to a self-defense issue generally give rise to a sudden-passion issue. *Trevino v. State*, 100 S.W.3d 232, 242 n. 40 (Tex. Crim. App. 2003). Because self-defense and sudden passion so often arise from the same facts, trial courts are "generally well advised to give both instructions." *Benavides v. State*, 992 S.W.2d 511, 525 (Tex. App.-Houston [1st Dist.] 1999, pet. ref'd).

### C. The appellant was entitled to a sudden passion instruction

In this case, the trial court instructed the jury on self-defense but refused to instruct the jury on sudden passion (CR 86-8). A trial court is obligated to instruct the jury on sudden passion when the evidence supports such a finding. *Id.* at 524-25. As long as the record contains some evidence to support a sudden-passion charge— even if that evidence is weak, impeached, contradicted, or unbelievable— the jury should receive a sudden-passion instruction. *McKinney*, 179 S.W.3d at 569.

While the appellant did claim he acted in self-defense, the facts giving rise to sudden passion were larger and encompassed more actions than those relating only to self defense. There was ample evidence apart from self-defense that he acted out of sudden passion. The appellant testified that he needed his mobile phone for work;

that it would cost him a significant amount of money if he could not retrieve it. The appellant was far from affluent. He was desperate: his "mind was doing a hundred miles a minute" and he was mad (RR Vol. V at 156).

Hickman testified that he had never seen the appellant act like that before:

> I'd never seen a bad side to him. Never have. But that day, he tripped all the way out.
>
> *********
>
> He was silent. His -- his face, I can't describe it, but he was not hisself. He was, like, transformed to something else. I don't know what it was, but he was not hisself. I had never seen him act like that before, never.

(RR Vol. IV at 128-9, 136).

While the jury did reject the appellant's self-defense claim, the Court of Criminal Appeals has held that a "jury's rejection of self- defense at guilt-innocence does not necessarily mean that, given an instruction on sudden passion at punishment, it would have rejected that theory as well." *Trevino*, 100 S.W.3d at 242-43. Given the foregoing, especially the fact that the complainant's theft of his mobile phone caused a degree of anger, rage, resentment that rendered the appellant incapable of cool reflection, the trial court should have instructed the jury on sudden passion at the punishment phase.

If the jury had determined that the appellant acted out of sudden passion, the offense would have been reduced to a second-degree felony, which carries a maximum sentence of 20 years. *See* TEX. PENAL CODE § 19.02(d). Because the jury

20

assessed the appellant's punishment at 35 years without the sudden-passion instruction, the error in failing to instruct the jury was harmful. The correct remedy in such a situation is to reverse the trial court's judgment as to punishment and remand the case for a new punishment hearing. *See, e.g., Trevino*, 100 S.W.3d at 243.

## PRAYER

The appellant respectfully submits that he was denied a fair and impartial trial. His issues presented should be sustained, and his sentence should be reversed.

__/s/   Kelly Smith_____
KELLY ANN SMITH
Texas Bar No. 00797867

## CERTIFICATE OF SERVICE

Under TEX. R. APP. P. 9.5, this certifies that the undersigned served a copy of this brief on the State of Texas at the following address: Devon Anderson, District Attorney 1201 Franklin, 6th Floor Houston, Texas 77002.

__/s/   Kelly Smith_____
KELLY ANN SMITH
Texas Bar No. 00797867

P.O. Box 10752
Houston, TX 77206
281-734-0668
Kelly.A.Smith.06@gmail.com