**AFFIRM; and Opinion Filed June 25, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

___

### No. 05-17-01201-CR

___

**KEDRICK MCDOW, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

___

**On Appeal from the Criminal District Court No. 3**
**Dallas County, Texas**
**Trial Court Cause No. F17-00705-J**

___

## MEMORANDUM OPINION
Before Justices Bridges, Partida-Kipness, and Carlyle
Opinion by Justice Partida-Kipness

Appellant, Kedrick McDow, was indicted for the murder of Marlese Arnett. A jury convicted McDow of murder as charged in the indictment and sentenced him to thirteen years' imprisonment. On appeal, McDow raises five issues contending that: (1) the evidence is insufficient to support the conviction for murder; (2) his rights under the Fourteenth Amendment were violated when the State presented false evidence; (3) the trial court erred in submitting three distinct theories of murder to the jury in a general verdict form; (4) the jury charge improperly permitted the jury to convict McDow on a theory not supported by the evidence; and (5) the trial court erred in failing to instruct the jury that appellant had no duty to retreat before using force. We affirm the trial court's judgment. Because the issues are settled in law, we issue this memorandum opinion. *See* TEX. R. APP. P. 47.4.

## BACKGROUND

On March 10, 2016, thirty-two-year old Marlese Arnett was shot and killed by McDow. The murder was precipitated by something as trivial as a bump on a car door. The circumstances surrounding the murder took place at the intersection of La Prada Drive and John West Road and several locations near that intersection.

On the day of the murder, McDow and his girlfriend, Keira Johnson, drove her grandfather's maroon Jeep Cherokee to a smoke shop located in a shopping center at the intersection of La Prada Drive and John West Road. McDow's two small children were in the back seat. The Jeep had a sticker on the rear window that said "protected by .40 cal." After McDow purchased cigars and candy from the smoke shop, they waited in the parking lot for McDow's uncle to come pick up a gun from them. While they waited, a white Impala pulled into the parking spot next to them. Robert Mitchell, Arnett's boyfriend, was driving; Arnett was the passenger. As Mitchell exited the Impala, his car door struck the passenger-side door of the Jeep. Mitchell only saw two people in the Jeep; Johnson, the driver, and McDow, the passenger. Mitchell went to talk to Y'Kendrick Smith who was parked in the spot on his other side.[1] When he returned to the Impala and opened the door, he hit the Jeep again. This triggered a verbal altercation involving Johnson, McDow, and Mitchell.[2] Johnson noticed that Mitchell had a gun

---

[1] Mitchell testified that he went to the smoke shop to meet Y'Kendrick to sell him Xanax.

[2] Mitchell testified when he bumped the Jeep the first time, he acknowledged it by stating "my bad" to McDow. He also testified that when he hit it the second time, he told McDow "my fault" as McDow checked the Jeep for damage and indicated there was nothing wrong. Johnson testified that Mitchell said nothing when he hit the Jeep the first time and that he did not acknowledge fault until she said something to him after he hit it the second time. Both Mitchell and Johnson testified that the verbal altercation began after Mitchell first backed out of the parking spot to leave but then stopped his car and got out.

tucked into his front waistline. It was suggested that they stop arguing and meet across the street in back of the apartments to fight.[3]

Arnett then asked Mitchell to get back in the car. Mitchell complied with her request and drove away intending to go home. However, Arnett wanted him to get her some "weed" before they went home, so Mitchell drove to the La Prada Place apartment complex across the street where his marijuana dealer lived. As Mitchell made a U-turn to circle back to the apartment complex,[4] he noticed that the Jeep with McDow and Johnson was following them. After Mitchell bought the marijuana and they were heading out of the complex, Mitchell got out of the car holding a gun and told Arnett to drive straight home.[5] When he saw the Jeep at the entrance and thought they were going to turn back into the complex towards him and Arnett, Mitchell started shooting at the Jeep as it headed north on La Prada Drive. After Mitchell finished shooting and left the apartment complex on foot, Arnett turned southbound onto La Prada Drive. McDow and Johnson saw the white Impala heading in the opposite direction. At McDow's request, Johnson made a U-turn and drove southbound trying to catch up to the Impala. Arnett was soon stopped at a red light at the John West Road–La Prada Drive intersection; McDow and Johnson were two cars behind it. When the light turned green, and Arnett turned west onto John West Road, McDow shot at the Impala from the passenger-side window. Johnson and McDow then turned right along with the Impala, and McDow fired two more shots at the car out of the same window. McDow fired the last shot while Arnett attempted a left-hand U-turn to circle back eastbound on John West Road. Before firing the shot, McDow told Johnson to "lean back in the seat." He then stuck the gun in

---

[3] Mitchell testified that McDow warned him to stop arguing and told him to meet him in the back of the apartments across the street. Johnson testified that it was Mitchell who told them to go across the street to the apartments.

[4] Because of the median down the center of La Prada Drive, Mitchell had to first drive down La Prada Drive a short distance before he could turn around and head into the apartment complex.

[5] Mitchell testified that he told Arnett to get out of the car because she was scared that the Jeep was following them. Arnett refused.

–3–

front of Johnson's face, pointed it out of the open driver-side window and fired towards Arnett. Arnett lost control of the Impala and drifted into a Valero gas station. Arnett died from a gunshot wound to the head. Forensic evidence showed that driver-side window of Arnett's vehicle was shattered by the bullet before it struck Arnett.

Y'Kendrick Smith testified he and Dakota Bircher were at the smoke shop when Mitchell and Arnett arrived in a white Impala. While there, Bircher noticed a purple-color Jeep with a sticker on the rear window that said "protected by .40 cal." Smith and Bircher testified they heard gunshots in the area shortly after Mitchell and Arnett left. After hearing the shots, they left and drove toward the John West Road–La Prada Drive intersection where Bircher saw the white Impala making a right onto John West. The purple Jeep was also making a right onto John West. A male was hanging out the passenger-side window of the Jeep and was shooting an automatic gun. It was the same Jeep that was at the smoke shop. Smith also saw that the Jeep was chasing the Impala and saw a hand hanging out of the passenger side window of the Jeep when the Jeep got on the side of the Impala. Smith and Bircher saw the Impala lose control and drift into the Valero gas station after it attempted to make a U-turn.

## ANALYSIS

### I.     Sufficiency of Evidence.

In McDow's first issue, he contends the evidence is legally insufficient to support his conviction for murder. McDow also argues that the State did not meet its burden of persuasion in disproving self-defense or defense of a third person. We disagree.

In reviewing the sufficiency of the evidence, we view all the evidence in the light most favorable to the verdict, and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 313 (1979); *Brooks v. State,* 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). We assume the fact

finder resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Clayton v. State,* 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the trier of fact's determinations of witness credibility and the weight to be given their testimony. *Brooks,* 323 S.W.3d at 899. Circumstantial evidence is as probative as direct evidence in establishing the guilt of the accused. *Clayton*, 235 S.W.3d at 778. Circumstantial evidence alone can be sufficient to establish guilt. *Id*.

### A. Mental State.

In this case, the indictment charged McDow with the murder of Arnett under all three ways of committing murder as provided for in section 19.02(b) of the penal code, to-wit: (1) intentionally and knowingly causing the death of an individual; (2) intending to cause serious bodily injury and committing an act clearly dangerous to human life that causes the death of an individual; and (3) committing a felony, other than manslaughter, and in the course of and in furtherance of the commission, committing or attempting to commit an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE §§ 19.02(b)(1), (2), (3). Under the first and second way of committing murder, the indictment alleged that McDow caused Arnett's death by shooting her with a firearm, a deadly weapon. Under the third way of committing murder, the indictment alleged that McDow caused Arnett's death by discharging a firearm at or in the direction of one or more individuals, and discharging a firearm at or in the direction of a vehicle while in the course of intentionally or knowingly committing a felony, to wit: deadly conduct.

McDow's only contention is that the evidence did not prove that he had the requisite intent to kill or intentionally inflict harm when he shot at Arnett's vehicle. He claims the evidence rationally supported a finding that he was guilty only of manslaughter and that his conduct only supports recklessness because the evidence could rationally be interpreted to show that McDow

acted with intent to frighten the occupants of the vehicle in response to Mitchell's inexcusable conduct of firing at McDow's vehicle as it exited the apartment complex. Alternatively, he contends his conduct shows that he caused Arnett's death with criminal negligence because he failed to perceive the risk of shooting toward the Impala.

A person acts intentionally with respect to a result of his conduct when it is his conscious objective or desire to cause the result. TEX. PENAL CODE § 6.03(a). A person acts knowingly with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.* at 6.03(b). Knowledge and intent are almost always proven by circumstantial evidence and may be inferred from the person's acts, words and conduct, as well as the surrounding circumstances. *Guevara v. State,* 152 S.W.3d 45, 50 (Tex. Crim. App. 2004); *Hernandez v. State,* 819 S.W.2d 806, 810 (Tex. Crim. App. 1991); *Parramore v. State* 853 S.W.2d 741, 745 (Tex. App.—Corpus Christi–Edinburg 1993, pet. ref'd). A jury may infer specific intent to kill from use of a deadly weapon in a deadly manner unless it is reasonably apparent that death or serious injury could not result from the use of the weapon. *Adanandus v. State*, 866 S.W.2d 210, 215 (Tex. Crim. App. 1993); *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). Further, if a deadly weapon is fired at close range and death results, the law presumes an intent to kill. *Womble v. State*, 618 S.W.2d 59, 64–65 (Tex. Crim. App. 1981); *Trevino v. State*, 228 S.W.3d 729, 736 (Tex. App.—Corpus Christi–Edinburg 2006, pet. ref'd). A firearm is a deadly weapon. TEX. PENAL CODE § 1.07(a)(17).

We start with the uncontroverted evidence that McDow used a deadly weapon and fired at Arnett's vehicle at close range, resulting in Arnett's death. This evidence alone is sufficient for the jury to have reasonably found that McDow had the specific intent to kill Arnett. *Womble*, 618 S.W.2d at 64–65; *Trevino*, 228 S.W.3d at 736 (from firing a firearm into occupied vehicle, jury could reasonably infer specific intent to kill occupant(s)). We also consider the evidence showing

that McDow decided to pursue the Impala, telling Johnson that "he wanted to go after them for shooting at [them] while the kids were in the car," as well as the evidence that McDow took specific aim at the driver in the Impala before firing the final fatal shot. *Guevara*, 152 S.W.3d at 50 (intent may be inferred from acts, words, and conduct of accused during offense).

The jury could also infer McDow's intent from his actions following the murder. The evidence showed that McDow fled the scene of the murder, made efforts to conceal the Jeep, and hid from law enforcement. Johnson testified that, after McDow shot Arnett, he told her to "duck off into some nearby houses." McDow then took Johnson's phone to prevent her from calling 911, telling her "[she] couldn't call because if [she] call[ed] the police, he go down and [she] go down." Both Johnson and McDow then hid the Jeep and agreed on a false story that they both told to members of their family and Johnson told to the police involving a black car whose occupants chased them and shot at them. McDow also knew the police were looking for him and decided to hide from them. Attempts to conceal incriminating evidence and implausible explanations to the police are circumstances of guilt. *Guevara*, 152 S.W.3d at 50. Evidence of flight evinces a consciousness of guilt, as does hiding from the police. *Clay v. State*, 240 S.W.3d 895, 905 n. 11 (Tex. Crim. App. 1997); *Simpson v. State*, 181 S.W.3d 743, 754–55 (Tex. App.—Tyler 2005, pet. ref'd). Finally, when Johnson met up with McDow at a hotel a week after the murder and asked him "why he shoot (sic)," McDow told her "it was mostly a respect thing, that we were in the car so he had to handle his business."

The evidence enumerated above is not only sufficient to support a finding that McDow intentionally or knowingly killed Arnett under section 19.02(b)(1) of the penal code, but it is also sufficient to prove the requisite mental state to support a finding that McDow committed murder under subsections (b)(2) and (b)(3) as alleged in the indictment.

**B. Self-Defense and Defense of a Third Person.**

McDow also argues that the State did not meet its burden of persuasion in disproving self-defense or defense of a third person.

The penal code provides that deadly force used in self-defense or in defense of another is a defense to prosecution for murder if that use of force is "justified." TEX. PENAL CODE §§ 9.02, 9.31–9.33. A person is justified in using deadly force against another when and to the degree he reasonably believes the deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force. *Id*. at 9.32(a)(2)(A). A person is justified in using deadly force against another to protect a third person, "[s]o long as the accused reasonably believes that the third person would be justified in using [deadly force] to protect himself. . . " *Smith v. State*, 355 S.W.3d 138, 145 (Tex. App.—Houston [1st. Dist.] 2011, pet. ref'd) (quoting *Hughes v. State*, 719 S.W.2d 560, 564 (Tex. Crim. App. 1986); *see also Henley v. State*, 493 S.W.3d 77, 89 (Tex. Crim. App. 2016) ("[A] defendant is justified in defending a third person if, under the circumstances as the defendant reasonably believes them to be, the third person would be justified in defending himself."); TEX. PENAL CODE § 9.33. A "reasonable belief" is defined as one that would be held by an ordinary and prudent person in the same circumstances as the actor. *See* TEX. PENAL CODE § 1.07(a)(42).

In a claim of self-defense or defense of third persons that would justify a defendant's use of force against another, the defendant bears the burden to produce evidence supporting the defense, while the State bears the burden of persuasion to disprove the raised issues. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018); *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003); *Saxton v. State*, 804 S.W.2d 910, 913-14 (Tex. Crim. App. 1991). The defendant's burden of production requires him to adduce some evidence that would support a rational finding in his favor on the defensive issue. *Braughton*, 569 S.W.3d at 608; *Krajcovic v.*

*State*, 393 S.W.3d 282, 286 (Tex. Crim. App. 2013). The State's burden of persuasion does not require the State to produce evidence; it requires only that the State prove its case beyond a reasonable doubt." *Zuliani*, 97 S.W.3d at 594 (citing *Saxton*, 804 S.W.2d at 913). Thus, "[i]n resolving the sufficiency of the evidence issue, we look not to whether the State presented evidence which refuted appellant's self-defense testimony, but rather we determine whether, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of [the offense] beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt." *Braughton*, 569 S.W.3d at 609 (quoting *Saxton*, 804 S.W.2d at 914).

The issue of self-defense and defense of a third person is a fact issue to be determined by the fact finder, who is free to accept or reject the defensive issue. *Id*. As the sole judge of the weight and credibility accorded any witness's testimony, the fact finder is free to believe or disbelieve the testimony of all witnesses and to accept or reject any or all of the defensive evidence. *Id*. A jury verdict of guilty is an implicit finding rejecting the defensive theory. *Id*.

In support of his argument that the State did not meet is burden of persuasion in disproving self-defense or defense of a third person, McDow argues that the evidence conclusively shows that he acted to defend himself, his children, and Johnson. McDow points to Johnson's testimony that, when she and Mitchell began to argue, Mitchell displayed a handgun and threatened to shoot her. McDow also asks the Court to keep in mind evidence that Mitchell fired shots at a vehicle he knew carried two children based on a verbal confrontation after he damaged Johnson's vehicle. However, Johnson testified that, while they were still at the smoke shop, McDow was "heated" and "mad" at Mitchell because Mitchell had a gun on him. Further, after Mitchell stopped firing at the Jeep and Johnson drove away from the apartment complex, McDow saw the Impala going in the opposite direction and specifically directed Johnson to make a U-turn so they could follow

it, telling Johnson that "he wanted to go after them for shooting at [them] while the kids were in the car." Finally, while hiding from the police, Johnson asked why McDow shot at the Impala, and McDow told Johnson "it was mostly a respect thing, that we were in the car so he had to handle his business."

Based on the evidence discussed previously supporting the jury's verdict finding McDow guilty of murder, as well as evidence of McDow's anger at Mitchell well before Mitchell fired shots at his vehicle at the apartment complex, McDow's decision to "go after them," and his explanation that the shooting was "mostly a respect thing . . . to handle his business," it was not unreasonable for the jury to reject McDow's self-defense and defense of third person claims. McDow's first issue is overruled.

## II.     False Evidence.

In McDow's second issue, he contends that his due process rights were violated when the State offered false testimony. McDow argues the State "misrepresented the scope and depth of the incentives given to Mitchell to obtain his testimony" and "misrepresented Mitchell's status to the jury as though there were nothing for him to gain by testifying at Appellant's trial." To support his claim, McDow requests that the Court take judicial notice of documents contained in the Appendix to his brief which were not included in the record and relate to Mitchell's prior criminal history. These documents consist of judgments, probation documents, plea agreements, and docket sheets from the 292nd District Court and Criminal District Court No. 1 of Dallas County.

An appellate court may, within its discretion, take judicial notice of adjudicative and legislative facts on appeal. TEX. R. EVID. 201(d); *Emerson v. State*, 880 S.W.2d 759, 765 (Tex. Crim. App. 1994); *Gaston v. State*, 63 S.W.3d 893, 900 (Tex. App.—Dallas 2001, no pet.). However, in this case, these documents were not considered by the trial court and were not part of the appellate record. As a general rule, appellate courts take judicial notice of facts outside the

–10–

record only to determine jurisdiction over an appeal or to resolve matters ancillary to decisions that are mandated by law. *Gaston*, 63 S.W.3d at 900. We are reluctant to take judicial notice of facts that go to the merits of the dispute. *Id.* Further, an appellate court "[cannot] look to records in other cases to supply factual deficiency in the case before it." *Turner v. State*, 733 S.W.2d 218, 223 (Tex. Crim. App. 1987); *Magic v. State*, 217 S.W.3d 66, 72 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Thus, we decline to take judicial notice of the documents outside the appellate record of this case. *See Davis v. State*, 227 S.W.3d 733, 737 (Tex. Crim. App. 2007) (appellate court properly declined to take judicial notice of exhibits that were not considered by the trial court and were not part of the appellate record); *Jack v. State*, 149 S.W.3d 119, 121 n. 1(Tex. Crim. App. 2004) (appellate courts may not consider factual assertions outside the appellate record; documents outside the record do not "concern[] events or actions in the trial court and . . . cannot be considered for the truth of the matters asserted.").

McDow also claims that the State used false testimony when the investigating detective "was permitted to assert to the jury that neither Mitchell's confession nor the video evidence would support charging him with aggravated assault supposedly because there had to be a complainant (cooperative victim)." To constitute a due process violation, the testimony used by the State must have been false, and it must have been material to the defendant's conviction. *Ex parte Robbins*, 360 S.W.3d 446, 460 (Tex. Crim. App. 2011). The detective's trial testimony has not been proven false. *Id*. at 460–63. McDow does not direct us to any evidence presented during trial or in a motion for new trial that supports his claim. Other than the assertions made by McDow in his brief, nothing in the record addresses the truth or falsity of the detective's testimony.

The record before this Court does not show the State used false evidence. McDow's second issue is overruled.

**III. Jury Charge – Alternate Theories of Murder Instructions.**

In McDow's third issue, he contends the trial court erred in submitting three distinct theories of murder, two of which involved less culpability. McDow argues that the charge should have required the jury to unanimously agree on his *mens rea* so that his punishment could be appropriately determined. The State argues the trial court did not err in submitting a general verdict form because the three theories of murder were alternative manner and means of committing a single offense and thus, unanimity was not required.

Jury unanimity is required in all criminal cases. *Young v. State*, 341 S.W.3d 417, 422 (Tex. Crim. App. 2011). Simply put, "the jury must unanimously agree about the occurrence of a single criminal offense, but they need not be unanimous about the specific manner and means of how that offense was committed." *Id.* This Court has rejected McDow's argument that sections 19.02(b)(1), 19.02(b)(2) and 19.03(b)(3) constitute three separate offenses. *See London v. State*, 325 S.W.3d 197, 206–07 (Tex. App.—Dallas 2008, pet. ref'd) (We reject appellant's argument that the jury charge alleged two separate statutory offenses of murder . . ."). Our sister courts have similarly resolved this issue. *Diko v. State*, 488 S.W.3d 855, 859–60 (Tex. App.—Fort Worth 2016, pet. ref'd) ("This court, on three previous occasions, has rejected the argument . . . that sections 19.02(b)(1) and 19.02(b)(2) constitute two separate offenses . . ."); *Smith v. State*, 436 S.W.3d 353, 378 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) ("Both the indictment and the jury charge indicate that the only offense involved in this case was murder by any of the three methods set forth in the Penal Code . . . The jury was not required to agree unanimously as to the manner and means by which appellant did so."); *Garcia v. State*, 246 S.W.3d 121, 141 (Tex. App.—San Antonio 2007, pet ref'd) ("[W]hether the jury determined that Garcia caused the death of Lesa Garcia [under section 19.02(b)(1) or 19.02(b)(2)] there was only one single crime of murder."). Further, murder is a result of conduct offense. *Schroeder v. State*, 123 S.W.3d 398,

400 (Tex. Crim. App. 2003). "If the focus of the offense is the result—that is, the offense is a 'result of conduct' crime—then different types of results are considered to be separate offenses, but different types of conduct are not." *Huffman v. State*, 267 S.W.3d 902, 907 (Tex. Crim. App. 2008).

McDow's argument that the differing mental states set forth in each subsection of the murder statute requires jury unanimity has also been rejected. "Where the legislature has specified that any of several different mental states will satisfy the intent or *mens rea* element of a particular crime, unanimity is not required on the specific alternate mental state as long as the jury unanimously agrees that the State has proved the intent element beyond a reasonable doubt." *Davis v. State*, 268 S.W.3d 683, 712 (Tex. App.—Fort Worth 2008, pet. ref'd) (citing *Jefferson v. State*, 189 S.W.3d 305, 311 (Tex. Crim. App. 2006); *see also Bundy v. State*, 280 S.W.3d 425, 431–32 (Tex. App.—Fort Worth 2009, pet. ref'd); *Yost v. State*, 222 S.W.3d 865, 877–78 (Tex. App.– Houston [14th Dist.] 2007, pet. ref'd). Further, McDow has cited no authority for the proposition that the jury must be unanimous on which manner and means he used to commit murder for purposes of assessing punishment. Conviction under any one of the three alternate theories of murder does not change the degree of offense or the range of punishment. Murder is a first-degree felony with a range of punishment of five to ninety-nine years or life regardless of which of the three theories is alleged and proved. *See* TEX. PENAL CODE §§ 12.32, 19.02(c). Article 37.07 § 3(c) of the code of criminal procedure requires the jury to agree unanimously on the guilt or innocence of the defendant and the amount of punishment where the jury finds the defendant guilty. TEX. CODE CRIM. PROC. art. 37.07 § 3(c); *Sanchez v. State*, 23 S.W.3d 30, 33–34 (Tex. Crim. App. 2000). Our research indicates that jury unanimity for issues that are preliminary to assessing the amount of punishment is required only when expressly provided for by the Legislature or when a defensive issue is involved that affects the degree of offense and range of

punishment. TEX. PENAL CODE § 15.04(d); *Sanchez*, 23 S.W.3d at 34 (requiring unanimity with respect to the jury's preliminary vote on sudden passion); *London*, 325 S.W.3d at 207 (same); *see also* TEX. CODE CRIM. PROC. art. 37.071 §§ 2(c)–(g).

Having determined that there was no error in the charge, we overrule McDow's third issue.

## IV. Jury Charge – Attempt to Commit Deadly Conduct Instruction.

In his fourth issue, McDow contends the trial court erred by submitting an instruction on a theory of felony murder not supported by the evidence and that this error resulted in egregious harm.

As previously indicated, the indictment charged McDow with the murder of Arnett under all three ways of committing murder as provided for in section 19.02(b) of the penal code. In accordance with the indictment, the jury was instructed on all the theories alleged in the indictment, including the following theory as alleged under section 19.02(b)(3):

> If you find from the evidence beyond a reasonable doubt that on or about the 10th day of March, 2016, . . . Kedrick McDow, . . . did unlawfully then and there intentionally or knowingly commit or attempt to commit an act clearly dangerous to human life, to-wit: discharging a firearm at or in the direction of one or more individuals, or discharging a firearm at or in the direction of a vehicle, that caused the death of Marlese Arnett, and the defendant was then and there in the course of intentionally or knowingly committing a felony, to-wit: Deadly Conduct, . . . and the death of Marlese Arnett was caused while the defendant was in the course of and in furtherance of the commission or attempt of Deadly Conduct. . .

McDow argues that the jury should not have been allowed to convict him based on the idea that he killed in connection with an attempt to commit deadly conduct because the case necessarily involved the knowing discharge of a firearm at a target and therefore, the jury could not rationally find that the death occurred in furtherance of a mere attempt to point and discharge a firearm.[6] We review a claim of jury charge error by first determining whether the jury charge contained error.

---

[6] McDow also claims that an attempt to commit deadly conduct is not a felony. This assertion is incorrect. Based on the allegations in this case, deadly conduct is a felony of the third degree. *See* TEX. PENAL CODE §§ 22.05(b)(2),(e). Under TEX. PENAL CODE § 15.02(d), an attempted offense is one category lower than the offense attempted. Thus, deadly conduct, as alleged in this case, would be a state jail felony. *See* TEX. PENAL CODE § 12.04(a).

*Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015). If there is error in the charge, we must consider whether the error caused sufficient harm to warrant reversal. *Id*.

The trial court must deliver to the jury a written charge distinctly setting forth the law applicable to the case. TEX. CODE CRIM. PROC. art. 36.14. The jury instructions must apply the law to the facts adduced at trial. *Sanchez v. State*, 376 S.W.3d 767, 773 (Tex. Crim. App. 2012). The instructions must also conform to allegations in the indictment. *Id*. However, the jury instructions should include only alternative theories of how a defendant committed an offense alleged in the indictment if the evidence presented at trial supports those theories. *Id*. at 774.

Assuming without deciding that the trial court's inclusion of "attempt" of deadly conduct in the jury instructions was erroneous, we must consider whether the error caused sufficient harm to warrant reversal. *Price*, 457 S.W.3d at 440. Where, as here, McDow did not raise a timely objection to the instructions, reversal is required only upon a showing of egregious harm. *Id*. Egregious harm is harm that deprives a defendant of a "fair and impartial trial." *Id*. (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985 (op. on reh'g)).

When a jury returns a general verdict of guilty on an indictment charging alternate methods of committing the same offense, the verdict stands "if the evidence is sufficient to support a finding under any of the theories submitted." *Sanchez*, 376 S.W.3d at 775 (citing *Kitchens v. State*, 823 S.W.2d 256, 258-59 (Tex. Crim. App. 1991); *see also Aguirre v. State*, 732 S.W.2d 320, 326 (Tex. Crim. App. 1982). Having already found the evidence sufficient to support a conviction under both sections 19.02(b)(1) and (b)(2), we conclude any error in the jury charge pertaining to the allegations in the indictment under section 19.02(b)(3) did not cause McDow egregious harm. McDow's fourth issue is overruled.

## V.    Jury Charge – No Duty to Retreat Instruction.

In McDow's fifth issue, he contends the trial court erred in denying his request for an instruction pursuant to section 9.32(c) of the penal code stating that he had no duty to retreat. The State argues that McDow was not entitled to the instruction because the issue was not raised by the evidence. We agree with the State.

A defense is supported or raised by the evidence if there is some evidence, from any source, on each element of the defense that, if believed by the jury, would support a rational inference that that element is true. *Shaw v. State*, 243 S.W.3d 647, 657–58 (Tex. Crim. App. 2007). In determining whether a defense is supported, a court must rely on its own judgment, formed in the light of its own common sense and experience, as to the limits of rational inference from the facts proven." *Id*. at 658. If a jury were instructed as to a defense even though the evidence did not rationally support it, the instruction would constitute an invitation to the jury to return a verdict based on speculation. *Id*. "Whether a defense is supported by the evidence is a sufficiency question reviewable on appeal as a question of law." *Id*.

Section 9.32(c) states:

> A person who has a right to be present at the location where the deadly force is used, who has not provoked the person against whom the deadly force is used and who is not engaged in criminal activity at the time the deadly force is used is not required to retreat before using deadly force as described by this section.

TEX. PENAL CODE § 9.32(c). Regardless of whether McDow had the right to give chase to Arnett's vehicle, the no duty to retreat provisions do not apply if the defendant was engaged in criminal activity at the time he used deadly force. *Morales v. State*, 357 S.W.3d 1, 5 (Tex. Crim. App. 2011). In addition to the fact the evidence shows that McDow deliberately pursued Arnett's vehicle even though neither he nor Johnson were still in any danger of being shot by Mitchell, the evidence also shows that during his pursuit of Arnett's vehicle, he shot at the vehicle multiple times whenever he got close to it. Under these circumstances, McDow was engaged in the

–16–

commission of the offense of deadly conduct[7] when he used deadly force and ultimately killed Arnett. Accordingly, we conclude that the trial court did not err by denying McDow's request for a "no duty to retreat" instruction. McDow's fifth issue is overruled.

## CONCLUSION

We affirm the trial court's judgment.

/Robbie Partida-Kipness/
ROBBIE PARTIDA-KIPNESS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2

171201F.U05

---

[7] As set forth in the jury charge, "A person commits the offense of deadly conduct if the person intentionally or knowingly commits or attempts to commit an act clearly dangerous to human life by discharging a firearm at or in the direction of one or more individuals, or discharges a firearm at or in the direction of a vehicle and is reckless as to whether the habitation, building, or vehicle is occupied." *See* TEX. PENAL CODE §§ 22.05(b)(2).



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

KEDRICK MCDOW, Appellant

No. 05-17-01201-CR    V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 3, Dallas County, Texas
Trial Court Cause No. F17-00705-J.
Opinion delivered by Justice Partida-Kipness, Justices Bridges and Carlyle participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 25th day of June, 2019.