**AFFIRM AS MODIFIED; Opinion Filed December 30, 2020**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-19-00704-CR**

**LIONEL EUGENE MCALISTER, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 3**
**Collin County, Texas**
**Trial Court Cause No. 003-82326-2018**

## MEMORANDUM OPINION

Before Justices Schenck, Osborne, and Partida-Kipness
Opinion by Justice Schenck

Lionel Eugene McAlister appeals his conviction for the misdemeanor offense of assault causing bodily injury to a family member. In his first issue, appellant challenges the sufficiency of the evidence to support his conviction. In his second issue, appellant urges the statute under which the time payment fee is assessed as a court cost is facially unconstitutional. We affirm the judgment as modified herein. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

BACKGROUND

On or about the night of December 6, 2017, appellant and his wife Tameka were at home in their bedroom arguing as appellant prepared to take a shower and Tameka prepared a bottle for their three-month-old daughter. During the argument, appellant implied he was having an affair, which angered Tameka, and she threw the bottle at appellant who was standing in the doorway between the bedroom and bathroom. The bottle missed appellant and landed in the bathroom. Appellant left the bedroom to go to the kitchen to get some soap. Tameka soon after left the bedroom to go to the kitchen to get another bottle for their daughter.

As they approached each other in the hallway, appellant's and Tameka's shoulders bumped into each other. Appellant yelled at Tameka and threw her to the floor of the living room where he got on top of her. Tameka hit appellant in the face repeatedly to get him off of her. Appellant got off of Tameka, and she returned to the bedroom and sat on the bed. Appellant went to another part of the house, returned to the bedroom with a hammer, and told Tameka "that he would tear up everything in the house." Tameka told appellant to leave. Appellant used the hammer to smash a mirror on the dresser.

Tameka told appellant that she was going to call the police. Appellant responded, "No, you're not going to call the police on me." Appellant lunged at Tameka, which caused the phone she was holding to fall near the bed, and both attempted to pick up the phone. Tameka picked up the phone first, and appellant

–2–

grabbed at her hands and wrists in an attempt to take the phone away from her. Tameka bit appellant, but he wrestled the phone away from her and took hold of her wrists. Appellant released Tameka, and she got up off of the floor and picked up their infant daughter.

While holding their daughter, Tameka told appellant she wanted to leave the room. Appellant sat on a chair in the bedroom, told Tameka she was not leaving, and directed her to sit on the bed. Tameka saw appellant's phone on the dresser and hit it towards him. Appellant got out of the chair and hit Tameka in the throat with an open hand. Tameka stumbled backwards onto the bed and picked up a lamp and hit appellant with it. Appellant grabbed Tameka's leg and began to pull her off the bed. Tameka screamed at appellant to let her go and to say that she was holding their daughter. Appellant responded, "The baby is not going to save you," before pulling Tameka onto the floor.

While Tameka lay on the floor on her back, appellant came up to her and took her in a choke hold in one arm and used his other hand to press her face into the carpet. Tameka could breathe despite appellant's tight grip on her neck and screamed for him to let her go. Appellant released her and picked up their daughter. Shaken, Tameka got up and sat on the bed while appellant sat in a chair holding their daughter. Eventually, appellant laid their daughter on the bed, and Tameka took the infant to sleep with her in the guest room that night.

The next morning, appellant returned Tameka's phone to her only after she assured him she wanted to use it to call her employer to say she would not be at work that day, not to call the police. After appellant left the house for work, Tameka packed a bag and left with their daughter.

Tameka called a friend who met her at the police station. Tameka's friend informed a police officer, Jason Blevins, that Tameka had been involved in a domestic incident. Officer Blevins observed scratches and bruising on Tameka, took photographs of her to document her injuries, and made a report. That same day, Detective Chad Hermes reviewed Officer Blevin's report and called appellant to see if appellant would come in for an interview. Although appellant refused to come in for an interview, he spoke with the detective on the phone, and the detective recorded their conversation.[1]

On March 22, 2018, appellant was charged by indictment with the class A misdemeanor offense of assault on a family member. Appellant pleaded not guilty, and the case proceeded to trial before a jury who found appellant guilty of assault as charged and answered true to the special issue of whether Tameka was a member of appellant's family. Appellant entered into an agreement on punishment with the State, which the trial court accepted. The trial court set punishment at 180 days in jail, probated for 18 months, with a fine of $500. This appeal followed.

---

[1] The recording of that conversation was admitted at trial and played for the jury.

DISCUSSION

## I. Sufficiency of the Evidence

In his first issue, appellant challenges the sufficiency of the evidence to support his conviction. He further urges the evidence presented at trial was insufficient to allow the jury to find beyond a reasonable doubt that appellant's use of force was not justified in self-defense.

### A. Sufficiency of Evidence of Assault

We review the sufficiency of the evidence under the standard set out in *Jackson v. Virginia*, 443 U.S. 307 (1979); *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013). We examine all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Matlock*, 392 S.W.3d at 667. We defer to the trier of fact's determinations of credibility and may not substitute our own judgment for that of the fact finder. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.); *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000).

A person commits assault bodily injury if the person "intentionally, knowingly, or recklessly causes bodily injury to another . . . ." TEX. PENAL CODE ANN. § 22.01(a)(1). Bodily injury is broadly defined in the penal code as "physical pain, illness, or any impairment of physical condition." *See* PENAL § 1.07(a)(8). This definition encompasses even relatively minor physical contact if it constitutes

more than offensive touching.  *See Laster v. State*, 275 S.W.3d 512, 524 (Tex. Crim. App. 2009).

The record contains the following evidence of Tameka's bodily injuries. Officer Blevins testified that the day after the altercation he observed Tameka "had a scratch or puncture wound on her head right above her right ear that had dried blood on it, some discoloration on her skin that was consistent with bruising, and scratches on her legs."  Additionally, the jury viewed the photographs Officer Blevins took that day of Tameka's injuries.

At trial, Tameka testified that on the evening of December 6, 2017, appellant (1) threw her to the floor and got on top of her, (2) hit her in the throat with an open hand, and (3) pulled her off of the bed and held her in a choke hold with one arm while using his other hand to press her face into the carpet.  The jury also heard the recording of appellant's interview with Detective Hermes in which appellant stated that he pushed Tameka, "chopped her" one-handed in the throat, and pulled her off the bed.  Appellant admitted he also got on top of Tameka, held her down by lying on top of her, and she told him she could not breathe.  Because one's acts are generally reliable circumstantial evidence of one's intent, the jury could reasonably infer that appellant intended to do exactly what he did—to inflict bodily injury on Tameka.  *See Laster*, 275 S.W.3d at 524; *see also Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004) ("Circumstantial evidence alone is sufficient to establish guilt.").

After viewing all the evidence in the light most favorable to the verdict, we conclude any rational trier of fact would have found the essential elements of assault. We now turn to address his arguments regarding self-defense.

### B. *Sufficiency of Evidence to Reject Self-Defense*

A person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force. PENAL § 9.31(a). A "reasonable belief" is one that an ordinary and prudent man would hold in the same circumstances as the actor. *Id.* § 1.07(a)(42).

Self-defense is a defense to prosecution under section 2.03 of the penal code. *See id.* §§ 2.03, 9.02, 9.31, 9.32. A defendant has the burden of producing some evidence to support a claim of self-defense. *London v. State*, 325 S.W.3d 197, 202 (Tex. App.—Dallas 2008, pet. ref'd). The State has the burden of persuasion in disproving self-defense. *Id.* This burden does not require the State to produce evidence refuting the self-defense claim; rather, the burden requires the State to prove its case beyond a reasonable doubt. *Id.* Self-defense is an issue of fact to be determined by the jury. *Id.* A jury verdict of guilty is an implicit finding rejecting the defendant's self-defense theory. *Id.*

Because the State bears the burden of persuasion to disprove self-defense by establishing its case beyond a reasonable doubt, we review both legal and factual sufficiency challenges to the jury's rejection of such a defense under the *Jackson v.*

*Virginia* standard. *Smith v. State*, 355 S.W.3d 138, 145 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). Under this standard, evidence is insufficient to support a conviction if, considering all the evidence in the record in the light most favorable to the verdict, no rational factfinder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *Id.* In resolving the sufficiency of the evidence issue, we look not to whether the State presented evidence which refuted appellant's self-defense testimony, but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of the offense beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt. *Braughton v. State*, 569 S.W.3d 592, 609 (Tex. Crim. App. 2018).

As discussed above, the record contains more than a mere "modicum" of evidence probative of all elements of the charged offense. *See Smith*, 355 S.W.3d at 145.

Appellant argues no rational juror could have found beyond a reasonable doubt that appellant did not reasonably believe the use of force was immediately necessary to protect himself from Tameka's use or attempted use of unlawful force. Appellant points to evidence in the record that Tameka instigated the use of unlawful force by throwing the baby bottle at appellant, told an officer she hit appellant with a bag of Christmas ornaments at one point that night when the two fought in the

hallway, and hit appellant with a lamp that broke immediately when she hit him. Appellant also points to evidence of text messages exchanged between appellant and Tameka on December 7 in which Tameka described the altercations as mutual.[2]

We first note that none of the evidence identified by appellant conclusively establishes appellant reasonably believed his use of force was immediately necessary to protect himself against Tameka's use or attempted use of unlawful force. Instead, we conclude there is sufficient evidence in the record to support the jury's rejection of appellant's version of the events that evening. At trial, appellant's theory was that every time he engaged in force it was in response to Tameka's use of force and that he walked away once he had subdued her. During his recorded call with Detective Hermes, appellant admitted he could have walked away from Tameka. Appellant stated:

> I feel like, if you are attacking me, I have a right to defend myself. If you don't value my personal space or respect me or—like—even just where I'm standing and you always wanna like attack me that way, I feel every bit that I have the right to defend myself.

The jury as factfinder was entitled to evaluate Tameka's testimony and disregard mistakes or inconsistencies while crediting other portions of her testimony as well as to evaluate appellant's recorded statements. *See Braughton*, 569 S.W.3d at 612.

---

[2] In one message, Tameka texted, "I'm not sure how something that was so nice in the beginning ended up with us trying to beat the shit out of each other." Later in that exchange, she texted, "We beat on each other which is not cool or normal." That evening, she texted, "I never said that I was a victim. I told them that we were beating on each other and that I'm sure you have your share of bruises as well."

The jury could have credited Tameka's testimony that in response to bumping shoulders in the hallway, appellant threw Tameka onto the floor and got on top of her; that after walking away from her and the conflict, appellant returned to their bedroom with a hammer and smashed a mirror before lunging at Tameka and grabbing at her hands and wrists when she attempted to pick up her phone to call the police; and that in response to Tameka's hitting his phone at him, appellant "chopped" her in her throat.

Accordingly, we conclude the jury rationally could have found that each element of the charged offense was proven beyond a reasonable doubt, and rationally could have rejected appellant's claims of self-defense. *See Smith*, 355 S.W.3d at 147. We overrule appellant's first issue.

## II. Unconstitutional Time Payment Fee

In his second issue, appellant argues the statute under which he was assessed a time payment fee is facially unconstitutional. He requests this Court modify the bill of costs by deleting all or ninety percent of the time payment fee. The State acknowledges that this Court recently concluded subsections (b) and (d) of section 133.103 are facially unconstitutional. *See Ovalle v. State*, 592 S.W.3d 615, 618 (Tex. App.—Dallas 2020, pet. filed). The State further agrees that the judgment should be modified to delete the portions of the time payment fee collected pursuant to subsections (b) and (d). We sustain appellant's second issue and modify the trial

court's judgment to reduce the total amount of court costs by $22.50 to reflect the reduction in the time payment fee from $25 to $2.50.

## CONCLUSION

We modify the trial court's judgment to reduce the total amount of court costs by $22.50 to reflect the reduction in the time payment fee from $25 to $2.50. As modified, we affirm the trial court's judgment.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

DO NOT PUBLISH
Tex. R. App. P. 47
190704F.U05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

LIONEL EUGENE MCALISTER,
Appellant

No. 05-19-00704-CR       V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law No. 3, Collin County, Texas
Trial Court Cause No. 003-82326-2018.
Opinion delivered by Justice Schenck. Justices Osborne and Partida-Kipness participating.


Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

We modify the trial court's judgment to reduce the total amount of court costs by $22.50 to reflect the reduction in the time payment fee from $25 to $2.50.

As **REFORMED**, the judgment is **AFFIRMED**.


Judgment entered this 30th day of December, 2020.